[This decision has been published in *Ohio Official Reports* at 96 Ohio St.3d 24.]

THE STATE EX REL. WCI STEEL, INC., APPELLEE, *v.* INDUSTRIAL COMMISSION OF OHIO; TOWNSEND, APPELLANT.

[Cite as *State ex rel. WCI Steel, Inc. v. Indus. Comm*., 2002-Ohio-3315.]

*Workers' compensation—Industrial Commission's award of wage-loss compensation vacated by court of appeals—Court orders commission to reconsider the evidence—Court of appeals' judgment reversed and commission's award of wage-loss compensation reinstated, when— Inconsistency in doctor's report due to bureau's form.*

(No. 2000-2345—Submitted March 26, 2002—Decided July 10, 2002.)

APPEAL from the Court of Appeals for Franklin County, No. 00AP-22.

_____

**Per Curiam.**

{¶1} The workers' compensation claim of appellant-claimant, Ray L. Townsend, has been allowed for "non-displaced fracture coccyx; lumbosacral sprain; major depressive disorder; herniated right disc L4-5." It has been specifically disallowed for "herniated disc at L5-S1; aggravation of pre-existing compression [of] traversing nerves and compromise right exiting foramina."

{¶2} Claimant made several requests for wage-loss compensation, covering consecutive periods. In support of those applications were reports from Drs. Edward G. Myers and Edward J. Urban. In an August 24, 1998 report, Dr. Myers attributed claimant's work restrictions in part to a herniated disc at L5-S1 and compression of the traversing nerves—both nonallowed conditions.

{¶3} Dr. Urban on November 5, 1998 completed a form from the Ohio Bureau of Workers' Compensation that asked him to list all restrictions arising from the claim's allowed conditions. Dr. Urban wrote: "No bending, climbing, squatting, stooping, pushing, or pulling-overhead reaching; or [l]ifting more then

[sic] 15 lbs. [or] [s]itting, standing, and walking more then [sic] 20 min. at a time." The form also contained a check-the-box section requesting the physician to "identify the physical capacity of the injured worker." It included inquiries as to the claimant's ability to sit, stand, walk, bend, squat, crawl, climb, and reach.

{¶4} In addition, there were sections on claimant's abilities to lift and carry. Six weight ranges were listed with the following choices: never, occasionally, frequently, and continuously. In the 11-to-20 pound category, Dr. Urban checked "never." Of further relevance was his designation "no" in response to whether claimant's hands could be used repetitively for fine manipulation.

{¶5} A Staff Hearing Officer for the Industrial Commission of Ohio awarded wage-loss compensation after finding, among other things, that the reports of Drs. Myers and Urban were evidence that causally related claimant's physical restrictions and resulting wage loss to his allowed conditions.

{¶6} Claimant's employer, appellee WCI Steel, Inc., sought a writ of mandamus in the Court of Appeals for Franklin County. Persuaded that the cited reports were deficient, the court of appeals issued a limited writ of mandamus and ordered the commission to vacate the award and reconsider the evidence.

{¶7} This cause is now before this court upon an appeal as of right.

{¶8} To the commission, the Myers and Urban reports were "some evidence" of a causal relationship between claimant's postinjury wage loss and his industrial injury. To the court of appeals they were not. Claimant defends the commission's evidentiary interpretation in this court and asks us to reinstate the award. Our review favors the claimant.

{¶9} Claimant does not challenge the disqualification of Dr. Myers's August 1998 report, implicitly conceding that it indeed referred to the specifically disallowed conditions of herniated disc L5-S1 and nerve traversal. He does, however, forcefully contest the rejection of Dr. Urban's report.

**{¶10}** The court of appeals' criticism had two bases. First, it concluded that Urban's indication of a restriction against the use of hands for fine manipulation implied that nonallowed conditions contributed to claimant's inability to return to his former job.

**{¶11}** We find this to be an inappropriate inference. Crucial to our finding is an understanding of how this information came about. The disputed Urban report was on a bureau-prepared form. Near the top was a blank space for the following: "List all restrictions which are the direct result of the allowed conditions in the claim." In response, Dr. Urban wrote: "No bending, climbing, squatting, stooping, pushing or pulling-overhead reaching; or [l]ifting more then [sic] 15 lbs. [or] [s]itting, standing, and walking more then [sic] 20 min. at a time." The court of appeals made no mention of any of these restrictions being inconsistent with the allowed conditions in the claim.

**{¶12}** The second half of the form asked the doctor to "identify the physical capacity of the injured worker." It contained check-the-box inquiries as to claimant's capacity to sit, stand, walk, bend, squat, crawl, climb, and reach. There were questions on lifting and carrying limitations as well as questions on the capacity of claimant's hands and feet for certain repetitive movements.

**{¶13}** When the form is viewed as a whole, the difficulty with the court of appeals' reasoning is this: the form *asks* the doctor to answer questions as to parts of the body not associated with the claimant's allowed conditions. The ready response to this, of course, is that the doctor could have answered in the affirmative when asked about claimant's ability to use his hands for fine manipulation. And this is a legitimate observation. One must remember, however, that claimants can have nonallowed conditions and still collect compensation. The key is whether and to what extent the nonallowed conditions contribute to the disability. *State ex rel. Waddle v. Indus. Comm*. (1993), 67 Ohio St.3d 452, 619 N.E.2d 1018. Even if the

nonallowed conditions are severe, they are irrelevant as long as the allowed conditions are independently disabling. Id.

{¶14} In this case, the bureau's own form asked Dr. Urban to address claimant's physical capacity, including the capacity of body parts unrelated to his allowed conditions. Dr. Urban did so. The bureau also asked Dr. Urban to list the conditions contributing to claimant's inability to return to his former position of employment. Dr. Urban did so and enumerated *only* claimant's allowed conditions as being the cause of his inability to return to his former job. As such, Dr. Urban's report cannot be disqualified on the basis of nonallowed conditions.

{¶15} The court of appeals also faulted Dr. Urban's report for being internally inconsistent. This finding was based on two things: (1) Dr. Urban's prohibition against "lifting more [than] 15 lbs." and (2) his check-the-box indication of "never" in response to the question of whether claimant could lift between 11 and 20 pounds. Again, the problem lies in the bureau-designed form. Dr. Urban was asked to list, in narrative form, claimant's restrictions. He wrote that claimant could not lift above 15 pounds. The bureau then listed six weight categories in which the doctor had the choice of only "never" "occasionally," "frequently," or "continuously." Unfortunately, because the form's closest relevant weight range was eleven to twenty pounds and Dr. Urban had set the uppermost limit at fifteen, checking off *any* of the designated responses would have resulted in internal inconsistency. Presumably, Dr. Urban checked "never" because claimant could not lift between sixteen and twenty pounds. If, however, he had checked "continuously" because claimant could lift eleven to fifteen pounds, the same accusation of inconsistency could still be made. So, too, with the designations "occasionally" and "frequently."

{¶16} The bureau form, therefore, put Dr. Urban in a no-win situation. Dr. Urban obviously did his best to answer the questions truthfully and accommodate the questions asked by the bureau. Claimant can never lift up to twenty pounds

4

and, based on the makeup of the forms, Dr. Urban's answers were not irreconcilable. Accordingly, his report is deemed "some evidence" supporting a causal relationship between wage loss and the allowed conditions.

{¶17} The judgment of the court of appeals is reversed and the commission's award of wage-loss compensation is ordered reinstated.

Judgment reversed.

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

_____

Stewart Jaffy & Associates Co., L.P.A., Stewart R. Jaffy and Marc J. Jaffy, for appellant.

Buckingham, Doolittle & Burroughs, L.L.P., and Deborah Sesek for appellee.

_____