DECISION ON OBJECTIONS TO MAGISTRATE'S DECISION
{¶ 1} Relator, York International Corporation, commenced this original action requesting a writ of mandamus that orders respondent Industrial Commission of Ohio to vacate its order awarding R.C. 4123.56(B) wage loss compensation to respondent Carolyn Zobel ("claimant") beginning August 2, 2001, and to enter an order denying said compensation.
 {¶ 2} Pursuant to Civ.R. 53 and Section (M), Loc.R. 12 of the Tenth Appellate District, this matter was referred to a magistrate who issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) In his decision the magistrate concluded that: (1) Dr. Monbarren's August 2, 2001 report constitutes some medical evidence that the commission could rely on to support its determination claimant is unable to perform comparably paying work, and (2) claimant's failure to present evidence of a search for a comparably paying work does not bar her wage loss claim, given the staff hearing officer's permissible conclusion that claimant is not physically capable of comparably paying work. Accordingly, the magistrate determined the court should deny the requested writ of mandamus.
 {¶ 3} Relator has filed objections to the magistrate's decision, largely rearguing those matters adequately addressed in the decision. For the reasons set forth in the magistrate's decision, as amplified here, the objections are overruled.
 {¶ 4} Relator's first objection contends the magistrate's factual finding No. 5 incorrectly states or, at a minimum, implies that after the claimant completed the front side of the form C-140 requesting wage loss compensation, Dr. Monbarren completed the back side of the same C-140 form. Contrary to relator's objections, the magistrate's findings of fact state simply that "Dr. Monbarren completed and signed the medical report on the backside of the C-140." The magistrate's finding neither states nor implies that Dr. Monbarren completed her medical report after the claimant completed the front side of the same form.
 {¶ 5} Relator's second objection is directed to the magistrate's factual finding No. 7, which states that Dr. Bond examined claimant only for bilateral carpal tunnel syndrome. According to relator, the commission did not so find, and a fair reading of Dr. Bond's complete report does not support the factual finding.
 {¶ 6} Relator is correct in asserting that the commission did not reject Dr. Bond's report on that basis, and the magistrate does not contend otherwise. The magistrate's finding of fact, however, is supported by Dr. Bond's report, which relates a physical examination of claimant's wrists and hands, not shoulders, and states the allowed condition is bilateral carpal tunnel syndrome. Indeed, in the conclusion section of his report, Dr. Bond sets forth the pertinent question: "What, if any, medical restrictions does Ms. Zobel have based solely upon the condition allowed in this claim?" (June 21, 2001 report, 3). Dr. Bond responds that "based upon review of the medical record and this examination, that as it relates to the allowed condition of this claim (bilateral carpal tunnel syndrome) Ms. Zobel has no need for medical restrictions." Id. Although his conclusion additionally mentions a "non-allowed non-injury related problems with both of her shoulders," and opines that the "condition does require medical restrictions regarding overhead work," he concludes that the restrictions are not related to the "injury claim condition of bilateral carpal tunnel syndrome." Id.
 {¶ 7} In objecting to the magistrate's conclusions of law, relator contends the magistrate incorrectly concluded Dr. Monbarren's August 2, 2001 report on the C-140 constitutes "some medical evidence" that the claimant is unable to perform comparably paying work. Relator in part premises its argument on the May 5, 1999 report of Dr. Monbarren, which addressed the condition of "adhesive capsulitis and subacromial bursitis." Relator apparently suggests that Dr. Monbarren's earlier report, with the reference to a nonallowed condition, was the premise for her August 2, 2001 report on which the commission relied.
 {¶ 8} As the magistrate pointed out, there is "no evidence * * * before this court that Dr. Monbarren's May 5, 1999 report was used by relator at the commission proceedings to challenge Dr. Monbarren's August 2, 2001 report. Nor does relator actually assert in this action that Dr. Monbarren's May 5, 1999 report was used in the commission proceedings to impeach Dr. Monbarren's August 2, 2001 report." (Magistrate's Decision, ¶ 40.) As the magistrate aptly observes, "issues not raised in the commission proceedings are not reviewable in mandamus." (Magistrate's Decision, ¶ 41, citing State ex rel. Quarto Mining Co. v.Foreman (1997), 79 Ohio St.3d 78.)
 {¶ 9} Relator responds that the burden was on claimant to present evidence to support the wage loss compensation award. Because the C-140 does not state the allowed conditions, relator contends the form falls short of meeting claimant's burden.
 {¶ 10} Contrary to relator's contentions and for the reasons the magistrate delineated, claimant met her burden when she presented the fully completed C-140 that states it is premised on the allowed conditions. The burden of going forward with evidence to impeach claimant's C-140 then shifted to relator. The stipulated evidence does not indicate relator presented such impeachment evidence, and the issue it raises in its objection thus is not reviewable on mandamus.
 {¶ 11} Relator next objects to the magistrate's conclusion that the commission did not abuse its discretion in rejecting Mark Anderson's vocational report. As the magistrate indicated, however, Anderson relied on Dr. Bond's opinion, which addressed the allowed condition of carpal tunnel syndrome. Accordingly, relator's contention is unpersuasive.
 {¶ 12} Lastly, relator contends the magistrate erroneously concluded the commission did not abuse its discretion in finding claimant's allowed condition of bilateral shoulder bursitis precluded her from being able to perform comparably paying factory assembly positions identified in the Anderson Report. The magistrate adequately addressed the issue in his report, and for the reasons set forth in it, the objection is unpersuasive.
 {¶ 13} Following independent review pursuant to Civ.R. 53, we find the magistrate has properly determined the pertinent facts and applied the salient law to them. Accordingly, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained in it. In accordance with the magistrate's decision, the requested writ is denied.
Objections overruled; writ denied.
Klatt and Watson, JJ., concur.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State of Ohio ex rel. : York International Corporation, : Relator, : v. : No. 03AP-567 The Industrial Commission of Ohio : (REGULAR CALENDAR) and Carolyn Zobel, : Respondents. :
 MAGISTRATE'S DECISION Rendered on December 24, 2003 IN MANDAMUS {¶ 14} In this original action, relator, York International Corporation, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order awarding R.C. 4123.56(B) wage loss compensation to respondent Carolyn Zobel beginning August 2, 2001 and to enter an order denying said compensation.
Findings of Fact
 {¶ 15} 1. Carolyn Zobel ("claimant") began her employment with York International Corporation in 1985 or 1987. She worked an assembly line job that required her to engage in repetitive overhead motions using a power screwdriver suspended overhead. Her employment with relator resulted in two industrial claims.
 {¶ 16} 2. On November 7, 1997, claimant filed an application for workers' compensation benefits. Following a March 27, 1998 hearing, a district hearing officer ("DHO") issued an order allowing the industrial claim for: "bilateral shoulder bursitis," and awarding temporary total disability ("TTD") compensation from October 27, 1997 through April 27, 1998. The DHO's order states reliance on a March 25, 1998 report from claimant's attending physician, chiropractor Susan M. Monbarren, D.C. Dr. Monbarren's March 25, 1998 report is not contained in the stipulated record. The DHO's order was administratively affirmed. The commission officially recognizes October 27, 1997 as the date of disability in this occupational disease claim against relator, a self-insured employer under Ohio's workers' compensation laws. The industrial claim number is 96-610228.
 {¶ 17} 3. The record contains a two-page typewritten narrative report from Dr. Monbarren dated May 5, 1999. In her report, which lists claim number 96-610228, Dr. Monbarren states: "Ms. Zobel is diagnosed with adhesive capsulitis and subacromial bursitis." There is no other statement of the allowed conditions of the claim in that report.
 {¶ 18} 4. On August 14, 2001, claimant moved for R.C.4123.56(B) wage loss compensation beginning June 10, 2000. In support, claimant submitted a wage loss application (C-140) dated August 13, 2001. The front side of the application form is completed and signed by claimant. Among the information claimant is required to provide is an industrial claim number. Claimant provided the claim number (96-610228) for the bilateral shoulder bursitis and she provided a reference claim number (96-470116) for the bilateral carpal tunnel syndrome, although those allowed conditions of the two claims do not appear with the claim numbers. The C-140 also requires claimant to complete a "work history." Claimant indicated that she worked as a clerk for "ConSun" from June 10, 2000 to July 22, 2000, was unemployed from July 23, 2000 to September 7, 2000, and was employed as a clerk at "Wal-Mart" from September 8, 2000 to present.
 {¶ 19} The front side of the C-140 instructs claimant to "[h]ave your attending physician complete the medical report on the back of this application."
 {¶ 20} 5. Dr. Monbarren completed and signed the medical report on the backside of the C-140. The medical report is dated August 2, 2001. The form asks the physician of record to "[l]ist all restrictions which are a direct result of the allowed conditions in this claim." In response, Dr. Monbarren wrote: "No repetitive motion or movements above head. No lifting over 10 lbs. No repetitive pushing or pulling."
 {¶ 21} 6. In a separate section, the medical report form asks the physician of record to mark an appropriate box to indicate claimant's physical capacity with respect to various work activities. Dr. Monbarren indicated that during an eight hour day, claimant can sit for six hours, stand for one hour, and walk for one hour. Claimant can "never" crawl. She can "occasionally" bend, climb, and reach. The form also asks the physician to indicate capacity for use of hands in repetitive action such as pushing and pulling arm controls. Dr. Monbarren indicated that claimant cannot repetitively push and pull arm controls.
 {¶ 22} 7. On June 20, 2001, claimant was examined at relator's request by Jess G. Bond, M.D. However, Dr. Bond examined claimant only for "bilateral carpal tunnel syndrome," the allowed condition of the other industrial claim (96-470116). Dr. Bond wrote:
It is my medical opinion, based upon review of the medical record and this examination, that as it relates to the allowed condition of this claim (bilateral carpal tunnel syndrome) Ms. Zobel has no need for medical restrictions. In addition to the allowed condition of this claim, Ms. Zobel has non-allowed non-injury related problems with both of her shoulders, and this condition does require medical restrictions regarding overhead work. However, it is my medical opinion that such restrictions are not related in any way to the 08/19/96 injury claim condition of bilateral carpal tunnel syndrome.
 {¶ 23} 8. Following a May 10, 2002 hearing, a DHO issued an order granting claimant's wage loss application in part. The DHO's order states:
The District Hearing Officer grants claimant's request for wage loss to the extent that working wage loss is granted from 08/02/2001 thru present, and to continue with proof, as lifting, carrying, pushing and pulling restrictions, imposed by Dr. Monbarren (08/02/2001) and related to allowed conditions, precluded claimant's return to her former job, which resulted in decreased earnings because claimant was required to take on less paying work.
Wage loss from 06/10/2000 the [sic] 08/01/2001 is denied for lack of contemporaneous medical restrictions related to allowed conditions.
 {¶ 24} 9. Relator administratively appealed the May 10, 2002 DHO's order. In support of the appeal, relator submitted a vocational report dated July 10, 2002, prepared by Mark A. Anderson, a vocational expert. Mr. Anderson wrote:
Since Ms. Zobel is currently employed, and the only restriction attributed solely to her shoulder condition is no overhead lifting, she currently would have access to occupations com-parable to that of which she held at York International prior to her injury. * * *
* * *
According to the June 21, 2001 report submitted by Jess G. Bond, M.D., Ms. Zobel's only restriction attributed solely to her shoulder condition is no overhead lifting. Based on this medical information, and Ms. Zobel's age, education and previous work experience, there are a number of occupations for which she would be qualified in the local labor market.
These jobs would be available either through an individual job search campaign or from the Ohio Bureau of Employment Services. Wages for these occupations range from $14.08 to $17.16 per hour. According to data published by the Ohio Employment Services, there are estimated to be over 94 monthly openings for Assemblers in the Cleveland-Lorain-Elyria SMSA. * * *
10. Following a July 16, 2002 hearing, a staff hearing officer (" SHO") issued an order affirming the DHO's order. The SHO's order states:
The Staff Hearing Officer concurs with the District Hearing Officer's award of wage loss compensation for the period 8/02/01 to present and to continue upon submission of timely proof, subject to statutory maximums. The period 6/10/00 to 8/01/01 is denied due to lack of contemporaneous supporting medical evidence. The employer asserts that claimant did not seek out comparably paying work and relies upon the reports of Dr. Bond and vocational assessor Mark Anderson. The Staff Hearing Officer finds that the restrictions set forth by Dr. Monbarren (C-140) would preclude the factory/assembly position cited by M. Anderson. The Staff Hearing Officer, therefore, does not find that claimant has voluntarily restricted her earning's [sic] or engaged in a[n] inadequate job search. The restrictions of Dr. Monbarren are relied upon in preference to the opinions of Dr. Bond.
 {¶ 25} 11. Relator filed an appeal from the July 16, 2002 SHO's order. On August 16, 2002, another SHO mailed an order refusing relator's administrative appeal.
 {¶ 26} 12. On June 9, 2003, relator, York International Corporation, filed this mandamus action.
Conclusions of Law
 {¶ 27} Two main issues are presented: (1) whether Dr. Monbarren's August 2, 2001 report constitutes some medical evidence upon which the commission can rely to support its determination that claimant is unable to perform comparably paying work; and (2) whether claimant's failure to present evidence of a search for comparably paying work bars her wage loss claim.
 {¶ 28} The magistrate finds: (1) Dr. Monbarren's August 2, 2001 report does constitute some medical evidence upon which the commission can rely to support its determination that claimant is unable to perform comparably paying work; and (2) claimant's failure to present evidence of a search for comparably paying work does not bar her wage loss claim. Accordingly, it is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.
 {¶ 29} Ohio Adm. Code 4125-1-01 sets forth the commission's rules for the adjudication of wage loss compensation.
 {¶ 30} Ohio Adm. Code 4125-1-01(A) provides some definitions applicable here:
(7) "Suitable employment" means work which is within the claimant's physical capabilities, and which may be performed by the claimant subject to all physical, psychiatric, mental, and vocational limitations to which the claimant is subject at the time of the injury which resulted in the allowed conditions in the claim or, in occupational disease claims, on the date of the disability which resulted from the allowed conditions in the claim.
(8) "Comparably paying work" means suitable employment in which the claimant's weekly rate of pay is equal to or greater than the average weekly wage received by the claimant in his or her former position of employment.
 {¶ 31} Ohio Adm. Code 4125-1-01(C) provides that applications for compensation for wage losses shall be filed with the Ohio Bureau of Workers' Compensation ("bureau") on forms provided by the bureau. In that regard, Ohio Adm. Code 4125-1-01(C) states:
(2) A medical report shall accompany the application. The report shall contain:
(a) A list of all restrictions;
(b) An opinion on whether the restrictions are permanent or temporary;
(c) When the restrictions are temporary, an opinion as to the expected duration of the restrictions;
(d) The date of the last medical examination;
(e) The date of the report;
(f) The name of the physician who authored the report; and
(g) The physician's signature.
Ohio Adm. Code 4125-1-01(D) provides that:
The claimant is solely responsible for and bears the burden of producing evidence regarding his or her entitlement to wage loss compensation. * * *
Ohio Adm. Code 4125-1-01(D)(1)(c) states:
A good faith effort to search for suitable employment which is comparably paying work is required of those seeking non-working wage loss and of those seeking working-wage loss who have not returned to suitable employment which is comparably paying work[.] * * * A good faith effort necessitates the claimant's consistent, sincere, and best attempts to obtain suitable employment that will eliminate the wage loss. In evaluating whether the claimant has made a good faith effort, attention will be given to the evidence regarding all relevant factors including, but not limited to:
(i) The claimant's skills, prior employment history, and educational background;
(ii) The number, quality (e.g., in-person, telephone, mail, with resume), and regularity of contacts made by the claimant with prospective employers, public and private employment services;
* * *
(viii) Labor market conditions including, but not limited to, the numbers and types of employers located in the geographical area surrounding the claimant's place of residence;
(ix) The claimant's physical capabilities[.]
 {¶ 32} Here, the commission awarded wage loss compensation beginning August 2, 2001, commensurate with the date of Dr. Monbarren's medical report that claimant submitted with her wage loss application. On August 2, 2001, claimant was working as a clerk at Wal-Mart at an hourly wage substantially lower than the hourly wage she earned as an assembly line worker with relator. That claimant is permanently unable to return to her former position of employment as an assembler that involved repetitive overhead motions is not in dispute. However, relator attempted to show that, notwithstanding claimant's inability to return to her former position of employment, she is medically and vocationally able to perform work comparable in pay to the good paying factory job that she lost due to her industrial injury.[1] Relator attempted to prove this point with the Anderson vocational report which concludes that there are over 94 monthly openings for assemblers in the Cleveland-Lorain-Elyria area that claimant is qualified to perform.
 {¶ 33} The Anderson vocational report relies solely upon Dr. Bond's report for evidence of claimant's medical ability to perform work. The problem is that Dr. Bond did not examine claimant for "bilateral shoulder bursitis." Therefore, Dr. Bond's conclusion that the bilateral carpal tunnel syndrome produces no restrictions is irrelevant to the instant wage loss claim.
 {¶ 34} Accordingly, Anderson's conclusion that claimant remains qualified for comparably paying assembly work in the Cleveland-Lorain-Elyria area is facially flawed and cannot constitute evidence upon which the commission could rely to support relator's position on comparably paying work. Although the commission did not reject the Anderson report for that reason, it did, however, reject the Anderson report for another reason. The commission stated that it found Dr. Monbarren's report to be more persuasive than Dr. Bond's report and, on that basis, rejected the Anderson vocational report.
 {¶ 35} The SHO went one step further than rejection of the Anderson vocational report. The SHO affirmatively found, in the absence of a supporting vocational report, that the restrictions set forth in Dr. Monbarren's report preclude the factory/assembly position cited by Anderson in his report. In the magistrate's view, the commission's SHO was competent to make that type of determination. In State ex rel. Jackson v. Indus. Comm. (1997),79 Ohio St.3d 266, a mandamus case involving a commission permanent total disability determination, the court held that the commission is the expert on vocational issues and thus need not rely upon expert opinion. Accordingly, applying Jackson to the instant wage loss claim, the magistrate finds that the commission's determination that Dr. Monbarren's restrictions preclude claimant from comparably paying factory/assembly positions cited by Mr. Anderson is a determination that lies within the commission's fact-finding discretion. Moreover, relator does not directly challenge the commission's discretion in making that determination.
 {¶ 36} The magistrate now turns to the first issue which is, as noted earlier, whether Dr. Monbarren's August 2, 2001 report constitutes some evidence upon which the commission can rely to support its determination that claimant is unable to perform comparably paying work.
 {¶ 37} Relator presents three challenges to Dr. Monbarren's August 2, 2001 report which the magistrate shall enumerate: (1) whether Dr. Monbarren's reference to "adhesive capsulitis and subacromial bursitis" as the diagnosis in her May 5, 1999 report required the commission to conclude that her August 2, 2001 report is premised, at least in part, on nonallowed conditions; (2) whether the absence of a listing of the allowed conditions that premised the restrictions set forth in Dr. Monbarren's August 2, 2001 report is fatal to the evidentiary value of the report; and (3) whether Dr. Monbarren's restrictions on standing and walking must be viewed as an indication that the restrictions set forth in the report are based, at least in part, on nonallowed conditions.
 {¶ 38} A claimant must always show the existence of a direct and proximate causal relationship between his or her industrial injury and the claimed disability. State ex rel. Waddle v.Indus. Comm. (1993), 67 Ohio St.3d 452. Nonallowed medical conditions cannot be used to advance or defeat a claim for compensation. Id.
 {¶ 39} The mere presence of a nonallowed condition in a claim for TTD compensation does not in itself destroy the compensability of the claim, but the claimant must meet his or her burden of showing that an allowed condition independently caused the disability. State ex rel. Bradley v. Indus. Comm.
(1997), 77 Ohio St.3d 239, 242.
 {¶ 40} Relator's first challenge to Dr. Monbarren's August 2, 2001 report, as enumerated above, does not facially challenge Dr. Monbarren's report. Instead, relator uses, in this action, a report written by Dr. Monbarren over three years prior to her August 2, 2001 report to suggest that the latter report is premised upon a nonallowed condition. There is no evidence in the record before this court that Dr. Monbarren's May 5, 1999 report was used by relator at the commission proceedings to challenge Dr. Monbarren's August 2, 2001 report. Nor does relator actually assert in this action that Dr. Monbarren's May 5, 1999 report was used in the commission proceedings to impeach Dr. Monbarren's August 2, 2001 report.
 {¶ 41} It is well-settled that issues not raised in the commission proceedings are not reviewable in mandamus. State exrel. Quarto Mining Co. v. Foreman (1997), 79 Ohio St.3d 78. Thus, relator's first challenge to Dr. Monbarren's report lacks merit.
 {¶ 42} The second challenge of relator to Dr. Monbarren's report focuses on the absence of a listing of the allowed condition that premises the restrictions set forth in Dr. Monbarren's August 2, 2001 report. The absence of such listing of the allowed condition of the claim does not automatically eliminate the report from evidentiary consideration and relator cites to no authority to support a contrary proposition.
 {¶ 43} Significantly, Dr. Monbarren's August 2, 2001 report meets all the requirements of Ohio Adm. Code 4125-1-01(C)(2) and is in fact a completion of the bureau's form issued for the purpose of supporting applications for wage loss com-pensation. It is also significant that the August 2, 2001 medical report is the backside of the wage loss application (C-140), that identifies the claimant, claimant's occupation at the time of the injury, the employer and the claim number. Moreover, the medical report form itself asks the physician to "[l]ist all restrictions which are a direct result of the allowed conditions in the claim."
 {¶ 44} Relator does not criticize the adequacy of the bureau's form nor does relator contend that Dr. Monbarren failed to complete the form. Relator simply invites this court to pronounce the completed form to be without evidentiary value because of the absence of a listing of the allowed conditions of the claim, something that the form itself does not require. In short, relator's second challenge to Dr. Monbarren's report lacks merit.
 {¶ 45} The third enumerated challenge to Dr. Monbarren's August 2, 2001 report focuses on Dr. Monbarren's restrictions on walking and standing. As previously noted, the report indicates that claimant is restricted to standing no more than one hour during an eight hour day and is likewise restricted to walking no more than one hour in an eight hour day. Relator suggests that it should be obvious that the standing and walking restrictions cannot relate to the "bilateral shoulder bursitis." On that basis, relator invites this court to declare the report to be of no evidentiary value. This court should decline the invitation.
 {¶ 46} State ex rel. WCI Steel, Inc. v. Indus. Comm.,96 Ohio St.3d 24, 2002-Ohio-3315 is instructive. In WCI Steel, the court reviewed the same bureau form supporting a wage loss claim at issue here. The court points out that the form asked the doctor to "[l]ist all restrictions which are a direct result of the allowed conditions in this claim," and that the form also contained a check-the-box section requesting the physician to "identify the physical capacity of the injured worker." It further inquires as to claimant's ability to sit, stand, walk, bend, squat, crawl, climb, and reach.
 {¶ 47} The WCI Steel court observed that the bureau's form asks the doctor to answer questions as to parts of the body not associated with the claimant's allowed conditions.
 {¶ 48} The same situation occurred here. The bureau's form asked Dr. Monbarren to identify the physical capacity of claimant with respect to standing and walking. The form suggests that the doctor is being asked to identify the physical capacity of the claimant with respect to standing and walking even if those activities are not impacted by the industrial claim.
 {¶ 49} Here, when asked to "[l]ist all restrictions which are a direct result of the allowed conditions in this claim," Dr. Monbarren did not list restrictions as to standing or walking. Thus, following the WCI Steel court's analysis of the bureau form, there is no inconsistency in Dr. Monbarren's report. Accordingly, relator's third challenge to the report must be rejected.
 {¶ 50} As previously noted, the second of the main issues presented here is whether claimant's failure to present evidence of a search for comparably paying work bars her wage loss claim. Given the above analysis, this issue is easily answered. Relator is not required to search for comparably paying work if her industrial injury precludes her from performing comparably paying work. See State ex rel. Parrish v. Indus. Comm., Franklin App. No. 01AP-871, 2002-Ohio-2705. Here, the commission, through its SHO, determined that the restrictions set forth by Dr. Monbarren preclude the factory/assembly positions cited by Mr. Anderson. In effect, the SHO determined that Dr. Monbarren's restrictions preclude the performance of comparably paying work. Given that the commission validly made that determination, relator cannot be faulted for failing to search for comparably paying work.
 {¶ 51} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.
[1] See State ex rel. Yates v. Abbott Laboratories, Inc.,95 Ohio St.3d 142, 2002-Ohio-2003, a case cited by relator in which the court applied the principle regarding comparably paying work to uphold the commission's denial of a wage loss claim. CompareYates with State ex rel. Ameen v. Indus. Comm.,100 Ohio St.3d 161, 2003-Ohio-5362, a case not cited by relator that distinguishes Yates.