DECISION
{¶ 1} Relator, William A. Goble, has filed this original action in mandamus requesting this court to issue a writ of mandamus ordering respondent Industrial Commission of Ohio to vacate its order denying relator's April 3, 2002 application for R.C. 4123.56(A) wage loss compensation and to enter a new order granting said compensation.
 {¶ 2} Pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals, this case was referred to a magistrate of this court who issued a decision, including findings of fact and conclusions of law. In his decision (attached as Appendix A), the magistrate concluded that respondent-commission had abused its discretion and that this court should issue a writ of mandamus ordering respondent-commission to vacate its staff hearing officer's order of July 23, 2002 denying relator's April 3, 2002 application for wage loss compensation, and in a manner consistent with this decision, enter a new order adjudicating the wage loss application. No objections have been filed to the decision of the magistrate.
 {¶ 3} Finding no error or other defect on the face of the decision of the magistrate, pursuant to Civ.R. 53, we adopt that decision as our own, including the findings of fact and conclusions of law contained in it. In accordance with the decision of the magistrate, a writ of mandamus is hereby granted ordering respondent Industrial Commission of Ohio to vacate its staff hearing officer's order of July 23, 2002 denying relator's application for wage loss compensation and, in a manner consistent with this decision, to enter a new order that adjudicates the wage loss application.
Writ of mandamus granted.
BROWN, P.J., and KLATT, J., concur.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State of Ohio ex rel. William A. Goble,:
 Relator, :
v. : No. 04AP-411
Industrial Commission of Ohio : (REGULAR CALENDAR)
and Employee Services Inc., :
 Respondents. :

MAGISTRATE'S DECISION
Rendered on November 17, 2004
Mencer Law Office, and Jetta Mencer, for relator.
Jim Petro, Attorney General, and Dennis H. Behm, for respondent Industrial Commission of Ohio.
 IN MANDAMUS {¶ 4} In this original action, relator, William A. Goble, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying relator's April 3, 2002 application for R.C. 4123.56(A) wage loss compensation, and to enter an order granting said compensation.
Findings of Fact:
 {¶ 5} 1. On March 23, 1999, relator sustained an industrial injury while employed as a truck driver for South Shore Trucking ("South Shore"). On that date, relator was involved in a motor vehicle accident. The industrial claim is allowed for "contusion of back; herniated disc T7-T8," and is assigned claim number 99-356303.
 {¶ 6} 2. Relator returned to his driving job at South Shore following his industrial injury; however, in May 2000, he quit his employment with South Shore because he was experiencing increased back pain from the driving.
 {¶ 7} 3. On August 18, 2000, relator began employment at Wal-Mart in its automotive department as an "auto technician." As an auto technician he changed tires, changed oil, and installed batteries. Relator's starting hourly rate at Wal-Mart was $8.50.
 {¶ 8} 4. On January 2, 2001, relator filed an application for wage loss compensation.
 {¶ 9} 5. Following a February 21, 2001 hearing, a district hearing officer ("DHO") issued an order denying working wage loss compensation from October 18, 2000 through the hearing date. The DHO's order notes that relator "makes approximately $8.50 per hour and works about 40 hours per week." The DHO found that relator had not engaged in a job search since he began employment at Wal-Mart, and on that basis, denied the wage loss claim.
 {¶ 10} 6. Relator administratively appealed the DHO's order of February 21, 2001. Following an April 3, 2001 hearing, a staff hearing officer ("SHO") issued an order affirming the DHO's order. The SHO found that relator had failed to document a job search for comparably paying work during his employment at Wal-Mart.
 {¶ 11} 7. On April 6, 2001, Brett Kuns, D.O., placed relator under new medical restrictions based upon an acute exacerbation of the industrial injury. Dr. Kuns permanently restricted relator to sedentary employment.
 {¶ 12} 8. On April 21, 2001, another SHO mailed an order refusing relator's administrative appeal from the SHO's order of April 3, 2001.
 {¶ 13} 9. On April 3, 2002, relator filed a second application for wage loss compensation. On the application form (which relator completed on March 29, 2002) relator states that he "started at Walmart on 8-18-00 and is still working there 35 — 40 hours a week."
 {¶ 14} 10. Following a May 23, 2002 hearing, a DHO issued an order denying wage loss compensation beginning April 6, 2001 through the hearing date. The DHO's order states:
The District Hearing Officer finds that the claimant is earning $10.25 per hour and works 40 hours per week in the automotive department at Wal-Mart. It has previously been found by a 2/21/2001 District Hearing Officer order that this work is within the claimant's physical restrictions imposed upon him by the allowed conditions of this claim as outlined by Dr. Kuns.
The District Hearing Officer finds that the claimant has established that he cannot return to his former position of employment as an over-the-road trucker. The claimant is registered with OBJFS and indicated that the employer of record did not have an available job within his restrictions.
The District Hearing Officer finds, as have previous 2/21/2001 and 4/03/2001 Hearing Officers, that the injured worker has not complied with the requirements of OAC 4125-1-01(D)(1)(c), which imposes a mandatory requirement of those seeking working wage loss who have not returned to suitable employment (comparably paying work), to undertake a good faith effort to search for comparably paying work. A good faith effort necessitates the claimant's "consistent, sincere and best attempts to obtain suitable employment that will eliminate the wage loss."
The injured worker is earning $10.25 per hour and working an approximate 40 hour work week. This figure ($410.00) is approximately less than 2/3 of the claimant's average weekly wage in this claim of $639.41 and, therefore, is not comparably paying work.
The District Hearing Officer finds that the claimant has failed to provide evidence of a job search documenting a "consistent, sincere and best attempt" to find comparably paying work as required by OAC 4125-1-01(D)(1)(c).
Based upon the foregoing, the District Hearing Officer orders that the claimant's request for working wage loss benefits is denied.
 {¶ 15} 11. Relator administratively appealed the DHO's order of May 23, 2002. Following a July 23, 2002 hearing, the SHO issued an order stating:
The claimant's C-140 application filed 04/03/2002 remains denied. The request for working wage loss compensation for the requested period of 04/06/2001 through the present (07/23/2002) remains denied. The claimant has not met his burden of proof in showing that he is entitled to working wage loss compensation for the above period, under OAC 4125-1-01.
There is no dispute that the claimant is not physically capable of returning to his former position of employment as an overthe-road truck driver. The claimant has registered with OBJFS and the employer of record does not have a job available for the claimant within his physical restrictions as enumerated in the numerous reports on file from Dr. Kuns. The claimant obtained a job at Wal-Mart, within his physical restrictions, and earns $10.25 per hour, for a 40 hour work week. However, claimant has not submitted evidence of a continued job search for comparably paying work as was earned in his former position of employment. A previous application for wage loss for a previous period was denied on the exact same basis. The Staff Hearing Officer finds nothing has changed since that time. The claimant still works at Wal-Mart and has not submitted written documentation of a supplemental job search for comparably paying work since 04/06/2001. The claimant testified he does not keep a record of his searches. Further, the claimant testified at hearing that he does not believe he will ever obtain a better paying job than he has at Wal-Mart, and that he hopes to become a manager there someday. Claimant is a high school graduate and has not met his burden of proof in showing he has made a continued and good faith effort to find comparably paying work to eliminate any loss in wages. The fact that claimant has a rather large family and a 40 hour per week job at Wal-Mart, does not relieve him of the mandatory requirement under OAC 4125-1-01 to seek comparably paying work.
 {¶ 16} 12. On August 17, 2002, another SHO mailed an order refusing relator's administrative appeal from the SHO's order of July 23, 2002.
 {¶ 17} 13. On August 18, 2002, relator moved for reconsideration of the August 17, 2002 SHO's order. On October 4, 2002, the commission mailed an order denying reconsideration.
 {¶ 18} 14. On April 15, 2004, relator, William A. Goble, filed this mandamus action.
Conclusions of Law:
 {¶ 19} The issue is whether the commission erred in holding that Ohio Adm. Code 4125-1-01(D)(1)(c)'s provision for a search for comparably paying work imposes a "mandatory requirement" on relator under the circumstances of this case. Finding that the commission abused its discretion by applying its holding to deny wage loss compensation, it is the magistrate's decision that this court issue a writ of mandamus, as more fully explained below.
 {¶ 20} Ohio Adm. Code 4125-1-01 sets forth the commission's rules regarding the adjudication of wage loss applications. Ohio Adm. Code4125-1-01(A) sets forth certain definitions. Pertinent here is Ohio Adm. Code 4125-1-01(A)(8)'s definition:
"Comparably paying work means suitable employment in which the claimant's weekly rate of pay is equal to or greater than the average weekly wage received by the claimant in his or her former position of employment.
 {¶ 21} Ohio Adm. Code 4125-1-01(D)(1)(c) states:
A good faith effort to search for suitable employment which is comparably paying work is required of those seeking nonworking wage loss and of those seeking working-wage loss who have not returned to suitable employment which is comparably paying work * * *.
 {¶ 22} Ohio Adm. Code 4125-1-01(D)(1)(c)'s rule regarding a search for comparably paying work must be viewed in light of the case law regarding a search for comparably paying work.
 {¶ 23} State ex rel. Timken Co. v. Kovach, 99 Ohio St.3d 21,2003-Ohio-2450, is instructive. In Timken, the employer filed a mandamus action in this court to challenge a commission award of wage loss compensation. This court denied the writ and Timken appealed to the Supreme Court of Ohio. Affirming this court's judgment, the Timken court stated:
Timken turned to the Court of Appeals for Franklin County, which declined to issue a writ of mandamus ordering the commission to vacate its order of wage-loss compensation. It upheld the commission's reasoning and rejected Timken's assertion that wage-loss compensation was inappropriate absent evidence that claimant had searched for other comparably paying employment.
This cause is now before this court upon appeal as of right. The purpose of wage-loss compensation is to return to work those claimants who cannot return to their former position of employment but can do other work. Ideally, that other work generates pay comparable to the claimant's former position. Where it does not, wage-loss compensation covers the difference.
Receipt of such compensation hinges on whether there is a causal relationship between injury and reduced earnings, more specifically, on a finding that "claimant's job choice was motivated by an injury-induced unavailability of other work and was not simply a lifestyle choice."State ex rel. Jones v. Kaiser Found. Hosp. Cleveland (1999),84 Ohio St.3d 405, 407, 704 N.E.2d 570.
The requirement of a causal relationship is often satisfied by evidence of an unsuccessful search for other employment at the preinjury rate of pay. State ex rel. Ooten v. Siegel Interior Specialists Co. (1998),84 Ohio St.3d 255, 256, 703 N.E.2d 306. Because claimant allegedly refused a comparably paying position at Timken and did not search for another job, Timken asserts that claimant is ineligible for wage-loss compensation. Timken's position is untenable.
Relying on the Ohio Administrative Code, Timken asserts that a job search is mandatory. We have said otherwise. In Ooten, we indicated that a job search is "not universally required." Id. And in State ex rel.Brinkman v. Indus. Comm. (1999), 87 Ohio St.3d 171, 718 N.E.2d 897, we excused the claimant's lack of a job search when he had secured lucrative, albeit part-time, employment with a realistic possibility that it would change to full-time.
Brinkman and Ooten respectively involved part-time employment and self-employment — two categories of employment subject to enhanced scrutiny "to ensure that wage-loss compensation is not subsidizing speculative business ventures or life-style choices." Brinkman,87 Ohio St.3d at 173, 718 N.E.2d 897.
The employment at issue herein is full-time, not part-time, which lessens — but does not eliminate — these concerns. Indeed, "in some
situations, the commission may require a claimant with full-time employment to nevertheless continue looking for `comparably paying work.'" State ex rel. Yates v. Abbott Laboratories, Inc.,95 Ohio St.3d 142, 2002-Ohio-2003, 766 N.E.2d 956, ¶ 38. For regardless of the character of the work, "the overriding concern in all of these cases — as it has been since the seminal case of State ex rel. Pepsi-ColaBottling Co. v. Morse (1995), 72 Ohio St.3d 210, 648 N.E.2d 827 — is the desire to ensure that a lower-paying position — regardless of hours — is necessitated by the disability and not motivated by lifestyle choice. And this is a concern that applies equally to regular full-time employment." Id. at ¶ 37.
In determining whether to excuse a claimant's failure to search for another job, we use a broad-based analysis that looks beyond mere wage loss. This approach was triggered by our recognition that "[w]age-loss compensation is not forever. It ends after two hundred weeks. R.C.4123.56(B). Thus, when a claimant seeks new post-injury employment, contemplation must extend beyond the short term. The job that a claimant takes may have to support that claimant for the rest of his or her life — long after wage-loss compensation has expired." Brinkman,87 Ohio St.3d at 174, 718 N.E.2d 897.
In Brinkman, a job search was deemed unnecessary where the claimant secured a part-time job with a high hourly wage and a realistic possibility of being offered a full-time position. Conversely, in Yates,
evidence of a good-faith job search was required of a claimant with full-time employment who was making drastically reduced postinjury wages. We stressed in Yates that the claimant had voluntarily relocated to a place with a high rate of unemployment and was grossly underutilizing her college degree and real estate license.
In the case before us, our broad-based analysis allows us to consider the fact that claimant's current employment is with Timken — the same company at which he was injured. This militates against requiring a job search because claimant has some time invested with Timken. He has years towards a company pension. Moreover, his longevity may have qualified him for additional weeks of vacation or personal days. Much of this could be compromised if claimant were to leave Timken for a job elsewhere.
Brinkman held that it was inappropriate to ask a claimant to "leave a good thing" solely to narrow a wage differential. Given claimant's years of service with Timken, the benefits he receives there outweigh a higher-paying position he might be able to get at a new company. Thus, we apply Brinkman's rationale and preserve claimant's eligibility for wage-loss compensation.
(Emphasis sic.) Id. at ¶ 17-28.
 {¶ 24} Here, the commission failed to engage in a broad-based analysis on the issue of the search for comparably paying work that the case law requires. The commission simply assumed that a search for comparably paying work during relator's employment at Wal-Mart was a "mandatory requirement." Given relator's failure to search for work after accepting employment at Wal-Mart, the commission improperly concluded that he had not shown entitlement to wage loss compensation.
 {¶ 25} Under Timken and the cases cited therein, the commission had a duty to conduct a broad-based analysis to determine whether imposing a job search requirement would be inappropriately asking relator to "leave a good thing."
 {¶ 26} Concededly, the Wal-Mart job that began at a rate of $8.50 per hour was not work comparable in pay to the former job that generated an average weekly wage of $639.41. Even at the current rate of $10.25, the Wal-Mart job is still not comparably paying work. In concluding that relator was required to conduct a job search for comparably paying work while employed at Wal-Mart, the commission never addressed the preliminary question of whether relator is medically and vocationally qualified for comparably paying work. Because relator should not be required to search for something that does not exist in the local economy, the commission's broad-based analysis should address this question. See State ex rel. York Intl. Corp. v. Indus. Comm., Franklin App. No. 03AP-567, 2004-Ohio-2714.
 {¶ 27} Accordingly, for all the above reasons, it is the magistrate's decision that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio to vacate its SHO's order of July 23, 2002, denying relator's April 3, 2002 application for wage loss compensation, and, in a manner consistent with this magistrate's decision, enter a new order that adjudicates the wage loss application.