[Cite as *State ex rel. R & L Shared Servs., L.L.C. v. Indus. Comm.*, 2016-Ohio-1082.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. | : | |
| R&L [Carriers] Shared Services, LLC, | | |
| | : | |
| Relator, | | |
| | : | |
| v. | | No. 14AP-1018 |
| | : | |
| Industrial Commission of Ohio | | (REGULAR CALENDAR) |
| and Terry Phillips, | : | |
| | | |
| Respondents. | : | |

D E C I S I O N

Rendered on March 17, 2016

**On brief:** *Reminger Co., L.P.A.,* and *Melvin J. Davis,* for relator.

**On brief:** *Michael DeWine*, Attorney General, and *Lisa R. Miller,* for respondent Industrial Commission of Ohio.

**On brief:** *Fox & Fox Co., LPA, Bernard C. Fox, Jr.,* and *Brent P. Martini,* for respondent Terry Phillips.

IN MANDAMUS
ON OBJECTIONS TO MAGISTRATE'S DECISION

KLATT, J.

{¶ 1} Relator, R&L Carriers Shared Services, LLC, commenced this original action in mandamus seeking an order compelling respondent, Industrial Commission of Ohio ("commission"), to vacate the August 27, 2014 order of its staff hearing officer ("SHO") that awarded permanent total disability ("PTD") compensation to respondent, Terry Phillips ("claimant"), and to enter an order denying said compensation. In the alternative, relator requested an order compelling respondent to vacate the November 7,

2013 order of its SHO that denied relator's motion to depose claimant's spouse and a co-worker, and to enter an order that permits said depositions and then re-adjudicates claimant's PTD application.

{¶ 2} Pursuant to Civ.R. 53(C) and Loc.R. 13(M) of the Tenth District Court of Appeals, we referred this matter to a magistrate who issued a decision, including findings of fact and conclusions of law, which is appended hereto. The magistrate found: (1) Dr. Soin's August 19, 2013 report is not some evidence upon which the commission could rely to support its finding that claimant's industrial injury prohibits all sustained remunerative employment; (2) Dr. Rosen's September 4, 2013 report is not some evidence upon which the commission could rely to support its determination that claimant's allowed psychological/psychiatric condition precludes the claimant from all sustained remunerative employment; (3) Dr. Berg's January 11, 2014 report is some evidence that supports the commission's determination that the allowed psychological/psychiatric condition prohibits all sustained remunerative employment; (4) the commission did not abuse its discretion in not considering the nonmedical disability factors; (5) because Dr. Berg's January 11, 2014 report is the only evidence that can provide support for the commission's PTD determination, the commission's order must be adjusted to reflect a commencement date that coincides with the date of Dr. Berg's report; and (6) the commission did not abuse its discretion when it refused to disturb the SHO's order denying relator's motion to depose the claimant's spouse and a co-worker. Based upon these findings, the magistrate has recommended that we issue a writ of mandamus ordering the commission to amend the August 27, 2014 order of its SHO to eliminate the report of Dr. Soin and Dr. Rosen from evidentiary reliance and to adjust the start date of claimant's PTD compensation to January 11, 2014 to coincide with the date of Dr. Berg's report.

{¶ 3} Relator has filed objections to the magistrate's decision. In its first objection, relator contends that the magistrate erred by concluding that Dr. Berg's January 11, 2014 report constitutes some evidence to support an award of PTD compensation. Relator argues that Dr. Berg's report could not be considered because it is internally inconsistent, vague, and ambiguous. We disagree.

{¶ 4}   It is undisputed that on the occupational activity assessment form, Dr. Berg checked a box indicating that the claimant is incapable of work.   There is nothing equivocal about Dr. Berg's opinion on this critical point.   Relator makes much of the fact that Dr. Berg also noted on the form that the claimant has limitations arising from impairments due to his allowed claim.   Although Dr. Berg was not required to list these limitations, they are essentially the same limitations noted in the body of his report. These limitations, three of which Dr. Berg described as "marked limitations," are not inconsistent with Dr. Berg's determination that the claimant is incapable of sustained remunerative employment.   Relator's assertion that Dr. Berg may have checked the wrong box is pure speculation.   We agree with the magistrate's determination that Dr. Berg's report was properly considered by the commission and is some evidence supporting the award of PTD compensation.   Therefore, we overrule relator's first objection.

{¶ 5}   In its second objection, relator contends that the magistrate erred by concluding that the claimant was not obligated to mitigate his disability.   Essentially, relator contends that the magistrate should have granted a writ because the commission did not evaluate the nonmedical factors when it granted the claimant PTD.   We disagree.

{¶ 6}   As pointed out by the magistrate, the commission need not conduct an analysis of nonmedical factors when the claimant is incapable of sustained remunerative employment based on an allowed medical or psychological/psychiatric condition.   *State ex rel. Galion Mfg. Div. v. Haygood*, 60 Ohio St.3d 38, 40 (if claimant's medical conditions foreclose gainful employment, there is no requirement to consider nonmedical factors); *State ex rel. Speelman v. Indus. Comm.*, 73 Ohio App.3d 757, 762 (10th Dist.1992).   Because Dr. Berg's report is some evidence that the claimant is incapable of working based upon his allowed psychological/psychiatric claim, it was unnecessary for the commission to examine the nonmedical factors.   For this reason, we overrule relator's second objection.

{¶ 7}   In its third and last objection, relator contends that the magistrate erred by concluding that the commission did not abuse its discretion when it denied relator's motion to depose two lay witnesses prior to the hearing.   Again, we disagree.

{¶ 8}   As noted by the magistrate, the applicable Ohio Administrative Code provision makes no provision for deposing the type of fact witnesses that were the subject

of relator's motion.  We agree with the magistrate's assessment that the free pre-hearing exchange of information relevant to a claim referenced in Ohio Adm.Code 4121-3-09(A)(2) can take place without depositions.  We agree with the magistrate that the commission did not abuse its discretion when it refused to disturb the SHO's order that denied relator's motion to take depositions.  Therefore, we overrule relator's third objection.

{¶ 9}  Following an independent review of this matter, we find that the magistrate has properly determined the facts and applied the appropriate law.  Therefore, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein.  In accordance with the magistrate's decision, we grant a writ of mandamus to the limited extent noted in the magistrate's decision, but deny relator's further request for relief.

*Objections overruled;*
*writ of mandamus granted in part and denied in part.*

TYACK and BRUNNER, JJ., concur.

_____

## APPENDIX

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. | : | |
| R & L [Carriers] Shared Services, LLC, | | |
| | : | |
| Relator, | | |
| | : | |
| v. | | No. 14AP-1018 |
| | : | |
| Industrial Commission of Ohio | | (REGULAR CALENDAR) |
| and Terry Phillips, | : | |
| | | |
| Respondents. | : | |

---

### M A G I S T R A T E ' S   D E C I S I O N

#### Rendered on October 6, 2015

---

*Reminger Co., L.P.A.,* and *Melvin J. Davis,* for relator.

*Michael DeWine*, Attorney General, and *Lisa R. Miller,* for respondent Industrial Commission of Ohio.

*Fox & Fox Co., LPA, Bernard C. Fox, Jr.,* and *Brent P. Martini,* for respondent Terry Phillips.

---

### IN MANDAMUS

{¶ 10} In this original action, relator, R & L Carriers Shared Services, LLC ("R & L" or "relator"), requests a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate the August 27, 2014 order of its staff hearing officer ("SHO") awarding permanent total disability ("PTD") compensation to respondent, Terry Phillips ("claimant"), and to enter an order denying the compensation. In the alternative, relator requests that the writ order the commission to vacate the November 7, 2013 order of its SHO denying relator's motion to depose claimant's spouse and a co-worker, and to

enter an order permitting the depositions and re-adjudicating the PTD application following such depositions.

<u>Findings of Fact</u>:

{¶ 11} 1. On April 8, 2011, claimant injured his right arm when he was lifting boxes from the rear of a trailer. On that date, claimant was employed by relator, a self-insured employer under Ohio's workers' compensation laws.

{¶ 12} 2. The industrial claim (No. 11-818580) is allowed for:

> Traumatic right biceps tendon tear; complex regional pain syndrome; major depressive disorder, single episode, severe without psychotic features with significant anxiety.

{¶ 13} 3. According to a November 11, 2013 report from Eugene Lin, M.D., who examined claimant at the request of relator, and a January 8, 2014 report from Stephen W. Duritsch, M.D. who examined claimant at the commission's request, during 2012 Amol Soin, M.D., permanently implanted a spinal chord stimulator. According to the report of Dr. Duritsch, the spinal chord stimulator with lead was placed by Dr. Soin "at the top of C5 to the right of midline on 08/06/2012 * * *."

{¶ 14} 4. On March 12, 2013, following his examination, Dr. Soin issued a four-page report which is described as a "Chronic Pain Evaluation."

{¶ 15} 5. On August 19, 2013, Dr. Soin again examined claimant and thereafter issued a four-page report described as a "Chronic Pain Evaluation."

{¶ 16} In his report, under the heading "History of Present Illness," Dr. Soin wrote:

> ***Chronic Pain Evaluation*** Terry is a 54 year male whose chief complaint is pain located in the neck, left shoulder, left arm and left hand. The patient was asked to describe his pain using adjectives. He describes the pain as tingling, burning, dull, sharp, aching, throbbing, shooting, constant and intermittent. I would like to reference the patient's filled out forms scanned into the chart and reviewed by me as part of the HPI. These forms were reviewed and discussed with the patient by me. Terry rates the total pain level today as a 5 out of 10, with 10 being the worst pain that the patient has on a chronic daily basis. The patient states that the least amount of pain they have had over the past week is a 3 out of 10. The patient states that the most amount of pain they have experienced over the past week is a 10 out of 10. When asked if the patient has had an improvement in activity level since the first office visit, the patient said no. He mentions that the

pain has been present for a few months. Terry states that the pain is improved with nothing helps. The patient states that the pain is made worse with activity. The patient was asked how far they can walk before the pain prevents them from walking, and Terry responded that they can walk about one block. ***I asked Terry if he has an[y] weakness associated with the pain and the response was yes.*** Terry was asked if he feels numbness associated with his pain and he answered yes. The patient denies loss of control of bowl and bladder function. Terry is not able to sleep through the night because the pain condition prevents them from getting restful sleep.

(Emphasis sic.) (Sic passim.)

{¶ 17} Under "Physical Examination," Dr. Soin wrote:

**Cervical Spine:** Inspection reveals normal cervical lordosis. Inspection of the cervical spine reveals normal lordosis and the c-spine appears supple. Palpation of cervical facets did not elicit an extensive amount of pain. Chin to chest flexion test was normal and flexion was a full 60 degrees without pain. Chin to ceiling extension test was normal and achieved a full 75 degrees without pain. Lateral bending of the neck at 45 degrees did not cause pain. There were some trigger points felt in around the paraspinal cervical muscles. Spurlings test was carried out performed by extending the neck, rotating the head, and then applied downward pressure on the head. The pain did radiate into the limb ipsilateral to the side that the head is rotated to the affected side.

**Lumbar Spine:** Inspection of the lumbar spine reveals no scoliosis. Patient has pain to palpation in the lower lumbar spine. Facet loading was carried out whereby pressure was placed on the paravertebral segments in the lower lumbar spine while the patient twisted and it elicited pain. Finger to floor flexion with the knee extended was less than 90 degrees and limited by pain and stiffness, extension to 30 degrees was limited due to pain, as well as lateral bending to 25 degrees. Patient's straight leg raise was negative and it did not elicit pain in the lower lumbar spine. Additionally, at this point in time the patient did not not[e] any numbness or tingling, pain or signs of radiculopathy on the physical exam.

{¶ 18} Appearing on page four of the report, under the heading "Assessment and Plan," Dr. Soin listed ten statements as follows:

[One] -Left arm pain is new.

[Two] -[T]his is [A]nthem not [BWC] what I am seeing him about today.
[Three] - Filing on the right hand.

[Four] -[H]e states he Cannot work.

[Five] -R & L wants him to come back to work.

[Six] -His hand is completely contracted.

[Seven] -I am not sure this is practical for him to work with his non functioning hand.

[Eight] -There is no way that Terry can work.

[Nine] -Now he has [sic] having left arm pain in addition to the right.

[Ten] -Terry is unable to work due to severe pain and contracted arm that is non functional.

{¶ 19} Also, on page four of the report, under the heading "Prescription," Dr. Soin lists several prescribed medications and their dosing instructions.

{¶ 20} 6. On September 4, 2013, psychiatrist, Steven R. Rosen, D.O., wrote a one-page letter or report to claimant's counsel. The typewritten body of Dr. Rosen's report, states:

> This letter is concerning Terry Phillips and his emotional issues. Terry is suffering from depression directly related to his disability. He can no longer do the things that he used to do; he is dependent on others. These factors have contributed to his depression and impacted his self worth and affected his ability to deal with day to day stressors. His disability also makes it hard for him to be with people. Mr. Phillips feels very self conscious about his condition, is embarrassed about how he looks, has a hard time staying on task, and maintaining focus. He gets frustrated very easily and has a low tolerance of others.
>
> Due to his emotional response to his disability, he is unable to return to work. His depression will be related to how well he adjusts to the total loss of his right arm and possibly more physical limitations.

{¶ 21} 7. Earlier, on December 17, 2012, claimant moved for R.C. 4123.57(B) scheduled loss compensation for the loss of use of his right hand. Following an April 10, 2013 hearing, an SHO issued an order awarding R.C. 4123.57(B) compensation for the loss of use of the right hand. The SHO stated reliance upon two medical reports—the January 23, 2012 report of Dr. Thomas P. Matrka, M.D., and the February 17, 2012 report of Edward V. A. Lim, M.D.

{¶ 22} In his January 23, 2012 report, Dr. Matrka states:

> We continue to care for him for his work-related biceps tendon injury with subsequent development of complex regional pain syndrome (CRPS). Unfortunately, he has had a very poor outcome in the treatment of CRPS.
>
> As a result of his injury, Mr. Phillips has a permanent and total loss of the use of his right hand. On examination, the patient maintains his hand in a tightly clenched fist, with the fingers wrapped around the flexed thumb. The digits are stiff in this position, with an inability to mobilize them. The hand itself is held tightly against his abdomen. There is minimal motion in the wrist, elbow, or shoulder.
>
> Mr. Phillips is unable to use the hand for any of his daily activities, grooming, or basic functions. He is presently attempting to learn to utilize his left upper extremity for these functions.
>
> In his February 17, 2012 report, Dr. Lim states:
>
> Mr. Phillips is not able to do full duty work. He has no functional use of his right upper extremity. He can do primarily clerical work in an office type setting where he does not need to use his right upper extremity. These restrictions will most likely be a permanent situation for him since it is unlikely that he will improve the functional outcome of his right upper extremity.

{¶ 23} 8. Apparently, the April 10, 2013 order of the SHO is a final commission order.

{¶ 24} 9. On September 10, 2013, claimant filed an application for PTD compensation.

{¶ 25} 10. On October 21, 2013, at relator's request, psychologist, Michael T. Farrell, Ph.D., issued a three-page narrative report based upon two prior examinations performed in January and June of 2013, and his review of additional file information.  In his October 21, 2013 report, Dr. Farrell opines:

> It is my opinion that Mr. Phillips does maintain the residual functional capacity to engage in sustained remunerative employment when consideration is given the Major Depressive Disorder, Single Episode, Severe Without Psychotic Features With Significant Anxiety allowed in this claim. He does, however, have functional limitations directly and proximately related to this Major Depressive Disorder, Single Episode, Severe Without Psychotic Features With Significant Anxiety. There are histrionic and hypochondrical features, which causes a stronger somatic focus and tendencies toward embellishment, although not consciously malingering or faking. For example, there is a strong focus on inability versus what he can do. During one of my evaluations, he even stated to me that he has problems standing because of his arm injury. It is my opinion that there is a mild level impairment in social functioning. Associated with this, there is controlled agitation, minimal paranoia, and some social withdrawal. There is a mild level impairment in cognitive functioning. Although he reports significant difficulty with his concentration and short-term memory, this has not been observed on multiple interviews with Mr. Phillips. He is able to be attentive, conversant with details in areas of interest, and maintain adequate concentration to complete a rather lengthy psychological evaluation with numerous personal questions and psychological testing. There does appear to be some variation in his cognitive functioning secondary to his physical pain level and sleep. There is a minimal to mild impairment in stress tolerance. He rather quickly becomes frustrated, especially with [an] individual he perceives as questioning his integrity. He can become somewhat over-whelmed, dependent upon others, and fearful/worrisome. There is a minimal level [of] impairment in endurance/pace. He works at a somewhat slower pace, gives up somewhat easily on selected tasks, and demonstrates a lack of patience. He is able to work from a psychological perspective, given the psychological condition recognized in the claim, given these restrictions.

{¶ 26} 11. On January 11, 2014, at the commission's request, claimant was examined by clinical psychologist, Norman L. Berg, Ph.D.  In his nine-page narrative report, Dr. Berg opines:

**DIAGNOSIS:**

Axis I.        **Major Depressive Disorder single episode, severe without psychotic features with significant anxiety. 296.23**

Axis II.     **No diagnosis**       **V71.09**
Axis III.    **Deferred to medical exam**

Axis IV.    **On-going physical and related emotional problems; inability to continue work. Severity: 4-severe**

Axis V.     **GAF: 43**

**OPINION:**

These are my responses in regard to the specific questions posed by the Industrial Commission. In my opinion, claimant is still at [maximum medical improvement] in regard to his condition of "Major Depressive Disorder, single episode, severe without psychotic features with significant anxiety." This is based on the fact that claimant has been involved in mental health treatment (medication and counseling) for over 2 years, he continues in treatment, he continues to be very anxious and depressed, and he reports having ongoing and worsening symptoms related to his mental state and his physical problems from his industrial injuries. Based on AMA Guides, 2nd and 5th Editions, and with reference to the Industrial Commission Medical Examination Manual, I rate claimant as having 60% permanent impairment arising from the allowed condition of "Major Depressive Disorder, single episode, severe without psychotic features with significant anxiety."

In regard to activities of daily living, claimant is rated as having 50% permanent impairment in that claimant's depression and anxiety often reduce his desire to attend to his personal hygiene needs. Claimant mentioned that he does make an effort to attend to these needs but also mentioned that he often needs his wife['s] assistance. He

mentioned that this is rather embarrassing to him. Claimant is rated as having Class 3-moderate impairment in this area.

In regard to social functioning, claimant is rated as having 65% permanent impairment (Class 4-[marked]) in that claimant has a strong tendency to withdraw from social interactions, although he does have contact with family members and occasional contact with friends. He mentioned that he does not wish to be around others if he is not familiar with them. He also mentioned that he did go to his wife's coffee shop during the day because he wanted to be with her and felt uncomfortable when she was not with him. At that time he had some/superficial contact with others.

In regard to concentration, persistence, and pace claimant is rated as having 65% permanent impairment (Class 4-[marked]) in that claimant's difficulty with concentration, his slowness in cognitive functioning, and his significantly reduced stress/frustration tolerance would substantially interfere with his ability to cope with the routine demands of a work setting.

In regard to claimant's ability to adapt to the work setting, claimant is rated as having 65% permanent impairment (Class 4-[marked]) in that claimant's difficulty with concentration, his slowness in cognitive functioning, and his significantly reduced stress/frustration tolerance would substantially interfere with his ability to cope with the routine demands of a work setting.

The Occupational Activity Assessment form has been completed and is attached to this report.

{¶ 27} 12. On January 11, 2014, Dr. Berg completed a form captioned "Occupational Activity Assessment[,] Mental & Behavioral Examination."

{¶ 28} The form asks the examining psychologist to select one of three pre-printed statements that describe the clinical findings. In that regard, the form provides:

Based solely on impairment resulting from the allowed mental and behavioral condition (s) in this claim within my specialty, and with no consideration of the Injured Worker's age, education, or work training:

( ) This Injured Worker has no work limitations.

( ) This Injured Worker is incapable of work.

( ) This Injured Worker is capable of work with the limitation(s) / modification(s) noted below[.]

{¶ 29} Dr. Berg indicated by his mark that he agrees with the second pre-printed statement: "This Injured Worker is incapable of work."

{¶ 30} In the space provided immediately below the third pre-printed statement, Dr. Berg wrote in his own hand:

Claimant has the below-listed limitations based on the impairments arising from the allowed condition of "major depressive disorder, single episode, severe without psychotic features with significant anxiety."

Claimant has moderate limitations in his ability to understand and follow verbal directions.

He has marked limitations in his ability to concentrate and be persistent. He has marked limitations in memory and this is related to his difficulty with concentration.

He has marked limitations in his ability to interact with others in a work setting.

He has marked limitations in his ability to cope with routine work stress.

{¶ 31} 13. Earlier, on October 15, 2013, relator moved for leave to take the depositions of claimant's spouse, Denise L. Phillips, and one of his co-workers, Chris Fender.

{¶ 32} 14. Following a November 7, 2013 hearing, an SHO mailed an order on November 9, 2013 denying relator's motion for leave to take the depositions. The SHO's order explains:

By the denied motion, the Employer seeks authorization from the Industrial Commission to depose the Injured Worker's spouse and Mr. Chris Fender. As explained by counsel for the Employer, these are "*fact witnesses.*" The Employer desires the opportunity to depose both witnesses to develop evidence whether or not the Injured Worker is presently working/employed and to develop evidence regarding the Injured Worker's functional residual capacity to engage in work activities.

There is no constitutional due process right to take depositions of a non-physician, so called fact witness in workers' compensation administrative proceedings in Ohio. The Staff Hearing Officer finds that the best forum to adjudicate differences of opinion and to establish evidence for consideration for the hearing adjudicator is the hearing process itself. The Staff Hearing Officer is persuaded and finds that the respective positions of the parties in this matter can be best sorted out through the administrative hearing process. So called fact witnesses can be subpoenaed for hearing, placed under oath, and have their testimony transcribed. The Staff Hearing Officer is persuaded that the hearing process provides the parties the best opportunity to fully establish and set forth the relevant evidence to be considered by the Hearing Adjudicator.

{¶ 33} 15. On November 20, 2013, relator moved for reconsideration of the SHO's order of November 7, 2013.

{¶ 34} 16. On January 9, 2014, the three-member commission issued an interlocutory order, stating:

It is the finding of the Industrial Commission that the Employer has presented evidence of sufficient probative value to warrant adjudication of the request for reconsideration regarding the alleged presence of clear mistakes of law of such character that remedial action would clearly follow.

Specifically, it is alleged that the Staff Hearing Officer erred in denying the Employer's request to depose witnesses and by failing to apply the decision in State ex rel. Palmore v. Indus. Comm., 10th Dist. Franklin No. 02AP-1347, 2004-Ohio-1212.

Based on these findings, the Industrial Commission directs that the Employer's request for reconsideration, filed 11/20/2013, is to be set for hearing to determine whether the alleged mistakes of law as noted herein are sufficient for the Industrial Commission to invoke its continuing jurisdiction.

(Emphasis sic.)

{¶ 35} 17. Following a January 28, 2014 hearing, the three-member commission issued an order denying relator's November 20, 2013 motion for reconsideration.  The commission explained:

> The Employer has failed to meet its burden of proving that sufficient grounds exist to justify the exercise of continuing jurisdiction. Therefore, the Employer's request for reconsideration, filed 11/20/2013, is denied, and the Staff Hearing Officer order, issued 11/09/2013, remains in full force and effect.

{¶ 36} 18. On August 27, 2014, claimant's application for PTD compensation was heard by an SHO. The hearing was recorded and transcribed for the record.

During the hearing, Denise Phillips and Chris Fender were called to testify by relator's counsel as on cross examination. The hearing transcript provides that testimony.

{¶ 37} 19. Following the August 27, 2014 hearing, the SHO issued an order awarding PTD compensation starting August 19, 2013. The SHO states reliance upon the reports of three doctors to support the determination that the allowed conditions of the claim prohibit all sustained remunerative employment. The SHO found it unnecessary to consider or analyze the non-medical disability factors. The SHO's order explains:

> Permanent and total disability compensation is awarded from 08/19/2013 for the reason that on that date Dr. Soin stated that the Injured Worker was unable to work due to the allowed conditions of this claim.
>
> Based upon the reports of Drs. Amol Soin (08/19/2013), Steven Rosen (09/04/2013), and Norman Berg (01/11/2014), it is found that the Injured Worker is unable to perform any sustained remunerative employment solely as a result of the medical impairment caused by the allowed conditions. Therefore, pursuant to State ex rel. Speelman v. Indus. Comm. (1992), 73 Ohio App.3d 757, it is not necessary to discuss or analyze the Injured Worker's non-medical disability factors.
>
> The Staff Hearing Officer finds that the above cited reports are neither ambiguous nor internally inconsistent. The Staff Hearing Officer finds that the 9/4/2013 report of Dr. Rosen and the 1/11/2014 report of Dr. Berg are particularly persuasive that the injured worker is permanent and totally unable to return to any sustained remunerative employment due solely to the medical impairment caused by the allowed conditions in this claim.

(Emphasis sic.)

{¶ 38} 20. On December 11, 2014, relator, R & L Carriers Shared Services, LLC, filed this mandamus action.

Conclusions of Law:

{¶ 39} Six issues are presented: (1) whether the August 19, 2013 report of Dr. Soin provides some evidence to support the commission's finding that the allowed physical conditions of the claim prohibit all sustained remunerative employment, (2) whether the September 4, 2013 report of Dr. Rosen provides some evidence to support the commission's finding that the allowed psychological/psychiatric condition of the claim prohibits all sustained remunerative employment, (3) whether the January 11, 2014 report of Dr. Berg provides some evidence to support the commission's finding that the allowed psychological/psychiatric condition of the claim prohibits all sustained remunerative employment, (4) whether the commission abused its discretion in failing to consider the non-medical disability factors, (5) whether the commission must readjust the PTD start date, and (6) whether the three-member commission abused its discretion when it refused to disturb the SHO's order of November 7, 2013 denying relator's motion to depose.

## First Issue

{¶ 40} In the seminal case of *State ex rel. Waddle v. Indus. Comm.*, 67 Ohio St.3d 452 (1993), the court held that non-allowed medical conditions cannot be used to advance or defeat a claim for compensation. Later, in *State ex rel. Bradley v. Indus. Comm.*, 77 Ohio St.3d 239 (1997), citing its decision in *Waddle,* the court stated that the mere presence of a non-allowed condition in a claim does not itself destroy the compensability of the claim, but the claimant must meet his or her burden of showing that an allowed condition independently caused the disability. Even if the non-allowed conditions are severe, they are irrelevant as long as the allowed conditions are independently disabling. *State ex rel. WCI Steel, Inc. v. Indus. Comm.,* 96 Ohio St.3d 24, 2002-Ohio-3315, citing *Waddle.*

{¶ 41} Equivocal medical opinions are not evidence. *State ex rel. Eberhardt v. Flxible Corp.*, 70 Ohio St.3d 649, 657 (1994). Equivocation occurs when a doctor

repudiates an earlier opinion, renders contradictory or uncertain opinions, or fails to clarify an ambiguous statement. *Id.*

{¶ 42} Moreover, it has been repeatedly held that a physician's report can be so internally inconsistent that it cannot be some evidence supporting the commission's decision. *State ex rel. Lopez v. Indus. Comm.*, 69 Ohio St.3d 445 (1994); *State ex rel. Taylor v. Indus. Comm.*, 71 Ohio St.3d 582 (1995).

{¶ 43} However, in mandamus, courts will not second guess the medical expertise of the doctor whose report is under review. *State ex rel. Young v. Indus. Comm.,* 79 Ohio St.3d 484 (1997).

{¶ 44} The evaluation of the weight and credibility of the evidence before it rests exclusively with the commission. *State ex rel. Thomas v. Indus. Comm.,* 42 Ohio St.3d 31, 33 (1989), citing *State ex rel. Burley v. Coil Packing, Inc.,* 31 Ohio St.3d 18 (1987).

{¶ 45} Analysis begins with the observation that nowhere in his type-written report does Dr. Soin actually state what the allowed conditions of the industrial claim are. Parenthetically, the magistrate observes that the claim number is hand-written on the first page of the report above the body of the type-written report. There is no evidence in the record to suggest that Dr. Soin wrote the claim number on his type-written report.

{¶ 46} As earlier noted, claimant was awarded R.C. 4123.57(B) scheduled loss compensation for the loss of use of his right hand by the SHO's order of April 10, 2013. The SHO's order states reliance upon the January 23, 2012 report of Dr. Matrka and the February 17, 2012 report of Dr. Lim. Dr. Matrka found that claimant "maintains his hand in a tightly clenched fist." Thus, when Dr. Soin states in his report "[h]is hand is completely contracted," it can be reasonably inferred that Dr. Soin is referring to the loss of use of claimant's right hand for which he has been compensated. This suggests that Dr. Soin is aware of the industrial claim even though he never actually lists the claim allowances in his report.

{¶ 47} However, problematic here is the paragraph under "History of Present Illness," wherein Dr. Soin states that the "chief complaint is pain located in the neck, left shoulder, left arm and left hand." The industrial claim is not allowed for any condition of the left shoulder, left arm, or left hand. Rather, the claim is allowed for physical conditions on the right side of the body. Clearly, claimant's chief complaint as described

by Dr. Soin relates to non-allowed conditions and the pain associated with non-allowed conditions.

{¶ 48} The above analysis must be applied to the 9th and 10th statements set forth in the report of Dr. Soin. Again, those two statements are:

> [Nine] - Now he has [sic] having left arm pain in addition to the right.
>
> [Ten] - Terry is unable to work due to severe pain and contracted arm that is non functional.

{¶ 49} To the extent that the tenth statement can be viewed as a medical opinion that claimant is unable to perform sustained remunerative employment, the opinion is not some evidence of a compensable inability to work because the "severe pain" referenced in the statement appears to be related to non-allowed conditions. In any event, Dr. Soin's statement that claimant "is unable to work" is ambiguous as to whether or not non-allowed conditions are being included. Thus, the statement is not some evidence of a work-related disability.

{¶ 50} The sixth, seventh, and eighth statements are also similarly flawed and fail to provide some evidence of a work-related disability. Again, those three statements are:

> [Six] - His hand is completely contracted.
>
> [Seven] - I am not sure this is practical for him to work with his non functioning hand.
>
> [Eight] - There is no way that Terry can work.

{¶ 51} The above three statements are not some evidence that the loss of use of the right hand prohibits all sustained remunerative employment. Dr. Soin expresses uncertainty in his opinion when he states "I am not sure this is practical for him to work * * *." The uncertainty creates an ambiguous opinion. *Eberhardt.*

{¶ 52} Moreover, additional ambiguity is presented in the second statement: "this is [A]nthem not [BWC] what I am seeing him about today." The statement strongly suggests that Dr. Soin was not examining claimant for the industrial claim on August 19, 2013. It can be noted that "[A]nthem" is a reference to private insurance and that "[BWC]" is a reference to the Bureau of Workers' Compensation. Therefore, Dr. Soin's

August 19, 2013 report is at best ambiguous as to whether Dr. Soin was examining for the industrial claim.

{¶ 53} Clearly, based upon the above analysis, Dr. Soin's August 19, 2013 report must be eliminated from evidentiary consideration. The report is not some evidence upon which the commission can rely to support its finding that the industrial injury prohibits all sustained remunerative employment.

## Second Issue

{¶ 54} The second issue is whether the September 4, 2013 report of Dr. Rosen is some evidence to support the commission's finding that the allowed psychological/psychiatric condition of the claim prohibits all sustained remunerative employment.

{¶ 55} R.C. 4123.57(B) provides a schedule for the payment of compensation for the loss of enumerated body parts. It provides for 175 weeks of compensation for loss of a hand and 225 weeks of compensation for loss of an arm. Awards for the loss of a hand and loss of an arm are cumulative and not consecutive. *State ex rel. Cook v. Zimpher,* 17 Ohio St.3d 236 (1995), (claimant cannot receive consecutive benefits for loss of a foot and a leg under former R.C. 4123.57(C). *State ex rel. Ohio Dept. of Transp. v. Stegall,* 10th Dist. No. 12AP-446, 2013-Ohio-2452 (under R.C. 4123.57(B) an arm includes the hand of that arm). Thus, loss of an arm is compensated to a greater degree than loss of a hand. The loss of a hand is not equatable with loss of the arm under the statute.

{¶ 56} In his September 4, 2013 report, Dr. Rosen states that claimant's "depression will be related to how well he adjusts to the total loss of his right arm and possibly more physical limitations." As relator correctly points out, the claim is not allowed for loss of an arm. Rather, it is allowed for loss of a hand. On that basis, relator argues that Dr. Rosen's disability opinion is impermissibly premised upon a non-allowed condition, i.e., loss of an arm. The magistrate agrees with relator's argument and therefore finds that Dr. Rosen's report must be eliminated from evidentiary consideration. That is, Dr. Rosen's report is not some evidence that claimant's "depression" (presumably a reference to the allowed psychological/psychiatric condition) is the cause of disability, i.e., that claimant "is unable to return to work."

**Third Issue**

{¶ 57} The third issue is whether the January 11, 2014 report of Dr. Berg provides some evidence to support the commission's finding that the allowed psychological/psychiatric condition of the claim prohibits all sustained remunerative employment.

{¶ 58} On the Occupational Activity Assessment, as earlier noted, the examining psychologist is asked to select one of three pre-printed statements that describes an ability or inability to work.  By his mark, Dr. Berg chose the second statement:   "This Injured Worker is incapable of work."

{¶ 59} Only the third pre-printed statement invites the examining psychologist to note limitations and modifications in the space provided.

{¶ 60} Because Dr. Berg proceeded to note limitations and modifications in the space provided when his selection of the statement "[t]his Injured Worker is incapable of work" did not require him to do so, relator argues that Dr. Berg's Occupational Activity Assessment presents an ambiguity as to whether Dr. Berg actually intended to opine "[t]his Injured Worker is incapable of work."

{¶ 61}  As relator puts it:

> [I]t is unclear wither [sic] Dr. Berg truly intended to mark that Respondent Phillips was incapable of work or if he meant to check the third box that respondent Phillips was capable of work with limitations.

(Relator's brief, 19.)

{¶ 62} The magistrate disagrees with relator's argument.

{¶ 63} Nothing in the instructions on the pre-printed form actually prohibits Dr. Berg from noting limitations that support the statement "[t]his Injured Worker is incapable of work."  This is so even though the form only invites the noting of limitations when the examining psychologist is of the opinion that the injured worker is capable of work with limitations and modifications.

{¶ 64} Moreover, the limitations noted by Dr. Berg in the space provided are not in obvious conflict with the statement "[t]his Injured Worker is incapable of work."  That is, Dr. Berg noted "marked" limitations in concentration, persistence, memory, ability to

interact with others in a work setting, and ability to cope with routine work stress.  To conclude, as does relator, that the "marked" limitations do not preclude all sustained remunerative employment would require this court to second guess Dr. Berg's medical expertise—something this court should not do.  *Young; State ex rel. Certified Oil Corp. v. Mabe,* 10th Dist. No. 06AP-835, 2007-Ohio-3877 at ¶ 4.

{¶ 65} Based upon the above analysis, the magistrate concludes that the January 11, 2014 report of Dr. Berg provides some evidence to support the commission's finding that the allowed psychological/psychiatric condition of the claim prohibits all sustained remunerative employment.

## Fourth Issue

{¶ 66} According to relator, claimant failed to seek rehabilitation services geared toward improving use of his non-dominant left upper extremity.  Relator asserts that claimant "has not requested medical equipment, assistive devices, rehabilitation services, or vocational rehabilitation associated with his allowed conditions."  (Relator's brief, 21-22.)  Based upon those assertions, relator argues that the commission abused its discretion in failing to consider those assertions in rendering its decision on PTD. Relator's argument lacks merit.

{¶ 67} Ohio Adm.Code 4121-3-34(D) sets forth the commission's guidelines for the adjudication of PTD applications.  Thereunder, Ohio Adm.Code 4121-3-34(D)(2) provides:

> (a) If, after hearing, the adjudicator finds that the medical impairment resulting from the allowed condition(s) in the claim(s) prohibits the injured worker's return to the former position of employment as well as prohibits the injured worker from performing any sustained remunerative employment, the injured worker shall be found to be permanently and totally disabled, without reference to the vocational factors listed in paragraph (B)(3) of this rule.
>
> (b) If, after hearing, the adjudicator finds that the injured worker, based on the medical impairment resulting from the allowed conditions is unable to return to the former position of employment but may be able to engage in sustained remunerative employment, the non-medical factors shall be considered by the adjudicator.

> The non-medical factors that are to be reviewed are the injured worker's age, education, work record, and all other factors, such as physical, psychological, and sociological, that are contained within the record that might be important to the determination as to whether the injured worker may return to the job market by using past employment skills or those skills which may be reasonably developed.

{¶ 68} It can be noted that Ohio Adm.Code 4121-3-34(D)(2) is consistent with case law. In *State ex rel. Galion Mfg. Div. Dresser Industries, Inc. v. Haygood*, 60 Ohio St.3d 38 (1991), the court states:

> It would serve no practical purpose for the commission to consider nonmedical factors in extreme situations where medical factors alone preclude sustained remunerative employment, since nonmedical factors will not render the claimant any more or less physically able to work.

*Id.* at 40.

{¶ 69} In *State ex rel. Speelman v. Indus. Comm.,* 73 Ohio App.3d 757, 762 (10th Dist. 1992), this court states:

> If there is some evidence upon which the commission specifically relies that a claimant is medically unable not only to return to his former position of employment but to perform any sustained remunerative employment, all as a result of the allowed condition, it is unnecessary that the commission look at any further factors, such as Stephenson factors, and an order allowing permanent total disability compensation should be entered. *State ex rel. Galion Mfg. Div., Dresser Industries, Inc. v. Haygood* (1991), 60 Ohio St.3d 38, 573 N.E.2d 60.

*Id.* at 762.

{¶ 70} Thus, in this case, the SHO's order of August 27, 2014 correctly holds that it is not necessary to discuss or analyze the non-medical disability factors. This is so because the January 11, 2014 report of Dr. Berg, upon which the commission relied, provides some evidence to support the finding that the allowed psychological condition of the claim prohibits all sustained remunerative employment.

**Fifth Issue**

{¶ 71} The fifth issue is whether the commission's start date for the PTD award must be adjusted.

{¶ 72} It is fundamental that the start date of a PTD award must be supported by some evidence upon which the commission relied to support its PTD award. *State ex rel. Dingus v. Quinn Dev. Co.,* 70 Ohio St.3d 580 (1994); *State ex rel. Marlow v. Indus. Comm.,* 10th Dist. No. 05AP-970, 2007-Ohio-1464 at ¶ 12.

{¶ 73} Here, the SHO's order of August 27, 2014 starts the PTD award on August 19, 2013, which is the date of Dr. Soin's report. August 19, 2013 is the earliest date of the three reports relied upon.

{¶ 74} However, given that the magistrate has determined that the August 19, 2013 report of Dr. Soin and the September 4, 2013 report of Dr. Rosen provide no evidence that claimant is prohibited from all sustained remunerative employment, those two reports cannot be relied upon to support a PTD start date. The only relied upon report that provides some evidence supporting the PTD award is the January 11, 2014 report of Dr. Berg. Therefore, the PTD start date must be adjusted to coincide with the date of Dr. Berg's report.

**Sixth Issue**

{¶ 75} The sixth issue is whether the commission abused its discretion when it refused to disturb the SHO's order of November 7, 2013 denying relator's motion to depose claimant's spouse, Denise L. Phillips and one of his co-workers, Chris Fender.

{¶ 76} R.C. 4123.09 provides that the commission "may cause depositions of witnesses * * * to be taken."

{¶ 77} Supplementing the statute, as of the date that relator moved to take depositions, i.e., on October 15, 2013 and currently, Ohio Adm.Code 4121-3-09(A) captioned "Evidence and discovery" provides:

> (2) The free pre-hearing exchange of information relevant to a claim is encouraged to facilitate thorough and adequate preparation for commission proceedings. If a dispute arises between the parties regarding the exchange of information, the hearing administrator, pursuant to paragraph (B) of this rule may conduct a pre-hearing conference to consider the

dispute. At the conclusion of the pre-hearing conference, the hearing administrator may issue a compliance letter, which becomes part of the claim file and which shall be adhered to by the parties.

* * *

(8) Procedure for obtaining the oral deposition of, or submitting interrogatories to, an industrial commission or bureau physician.

(a) A request to take the oral deposition of or submit interrogatories to an industrial commission or bureau physician who has examined an injured or disabled worker or reviewed the claim file and issued an opinion shall be submitted in writing to the hearing administrator * * *.

(b) The request must set out the reasons for the request * * *.

(c) If the hearing administrator finds that the request is a reasonable one, the hearing administrator shall issue a compliance letter that will set forth the responsibilities of the party that makes the request. * * *

(d) Except as may be provided pursuant to paragraph (D) of rule 4121-3-15 of the Administrative Code, when determining the reasonableness of the request for deposition or interrogatories the hearing administrator shall consider whether the alleged defect or potential problem raised by the applicant can be adequately addressed or resolved by the claims examiner, hearing administrator, or hearing officer through the adjudicatory process within the commission or the claims process within the bureau of workers' compensation.

* * *

(12) The hearing administrator, hearing officer, or industrial commission may compel the attendance or testimony of witnesses on their own motion or at the request of any party.

{¶ 78} As relator points out, Ohio Adm.Code 4121-3-09(A)(8) provides only for the deposition of a commission or bureau physician who has examined an injured or disabled worker, or reviewed the claim file and issued a written opinion.

{¶ 79} Ohio Adm.Code 4121-3-09(A) does not provide for deposing other physicians who may have examined for the employer or the claimant. Only commission or bureau physicians may be deposed under the rule. Thus, the rule regarding depositions is limited even as to depositions of physicians in the claim.

{¶ 80} Clearly, Ohio Adm.Code 4121-3-09(A) makes no provision for deposing what relator calls "*fact* witnesses." (Emphasis sic.) (Relator's brief, 23.) Clearly, Ohio Adm.Code 4121-3-09(A) makes no provision for deposing the witnesses that relator sought to depose, i.e., claimant's spouse and a co-worker.

{¶ 81} Relator suggests that the depositions of claimant's spouse and a co-worker are mandated under Ohio Adm.Code 4121-3-09(A)(2) which provides for "[t]he free pre-hearing exchange of information relevant to a claim * * *." Relator's suggestion lacks merit. Ohio Adm.Code 4121-3-09(A)(2) does not compel depositions or even mention depositions. Clearly, the free pre-hearing exchange of information can go forward without depositions.

{¶ 82} It is axiomatic that, in mandamus proceedings, the creation of the legal duty that a relator seeks to enforce is the distinct function of the legislative branch of government, and courts are not authorized to create the legal duty enforceable in mandamus. *State ex rel. Pipoly v. State Teachers Retirement Sys.,* 95 Ohio St.3d 327, 2002-Ohio-2219.

{¶ 83} Here, this court cannot create a clear legal duty to grant deposition requests that are not provided by the statute or by the Ohio Administrative Code.

{¶ 84} Moreover, as this court held in *State ex rel. LTV Steel Co. v. Indus. Comm.,*140 Ohio App.3d 680 (10th Dist. 2000), generally there is no due process right to discovery in administrative hearing cases and particularly no constitutional right to take depositions.

{¶ 85} For all the above reasons, the magistrate concludes that the commission did not abuse its discretion when it refused to disturb the SHO's order of November 7, 2013 denying relator's motion to depose.

## Conclusion

{¶ 86} Accordingly, for all the above reasons, it is the magistrate's decision that this court issue a writ of mandamus ordering the commission to amend the August 27, 2014 order of its SHO so that the August 19, 2013 report of Dr. Soin and the September 4, 2013 report of Dr. Rosen are eliminated from evidentiary reliance, and the start date for the PTD award is adjusted to coincide with the January 11, 2014 report of Dr. Berg.


/S/ MAGISTRATE
KENNETH W. MACKE


## NOTICE TO THE PARTIES

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).