[Cite as *State ex rel. Daily Servs., L.L.C. v. Indus. Comm.*, 2017-Ohio-2771.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| The State ex rel. Daily Services, LLC, dba Iforce, | : | |
| | : | |
| Relator, | : | |
| | : | |
| v. | : | No. 16AP-604 |
| | : | |
| Industrial Commission of Ohio and | : | (REGULAR CALENDAR) |
| Darion Stanford, | : | |
| | : | |
| Respondents. | : | |
| | : | |

D E C I S I O N

Rendered on May 11, 2017

*Pickrel Schaeffer & Ebeling,* and *Michele L. King,* for relator.

*F. Christopher Oehl,* for respondent Darion Stanford.

*Michael DeWine,* Attorney General, and *Lisa R. Miller,* for respondent Industrial Commission of Ohio.

IN MANDAMUS

TYACK, P.J.

{¶ 1} Daily Services, LLC, dba Iforce, filed this action in mandamus seeking a writ to compel the Industrial Commission of Ohio to overturn its order granting payment for rotator cuff repair surgery and related treatment.

{¶ 2} In accord with Loc.R. 13(M) of the Tenth District Court of Appeals, the case was referred to a magistrate to conduct appropriate proceedings.

{¶ 3} The parties stipulated the pertinent evidence and filed briefs. The magistrate, in turn, issued a magistrate's decision, appended hereto, which contains

detailed findings of fact and conclusions of law. The magistrate's decision contains a recommendation that we deny the request for a writ of mandamus.

{¶ 4} No party has filed objections to the magistrate's decision.

{¶ 5} After careful review, we find no error of law or fact on the face of the magistrate's decision. We, therefore, adopt the findings of fact and conclusions of law contained in the magistrate's decision. As a result, we deny the request for a writ of mandamus.

*Writ denied.*

SADLER and DORRIAN, JJ., concur.

# A P P E N D I X

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| The State ex rel. Daily Services, LLC, dba Iforce, | : | |
| | : | |
| Relator, | : | |
| | : | |
| v. | : | No. 16AP-604 |
| | : | |
| Industrial Commission of Ohio and Darion Stanford, | : | (REGULAR CALENDAR) |
| | : | |
| Respondents. | : | |
| | : | |

### M A G I S T R A T E ' S   D E C I S I O N

#### Rendered on February 22, 2017

*Pickrel Schaeffer & Ebeling,* and *Michele L. King,* for relator.

*F. Christopher Oehl,* for respondent Darion Stanford.

*Michael DeWine,* Attorney General, and *Lisa R. Miller,* for respondent Industrial Commission of Ohio.

### IN MANDAMUS

{¶ 6} Relator, Daily Services, LLC, dba IForce, has filed this original action requesting that this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order which authorized a second rotator cuff repair surgery, including preoperative testing and postoperative physical therapy as requested by Darion Stanford ("claimant"), and ordering the commission to

find that claimant had an intervening injury to his right shoulder which broke the chain of causation.

Findings of Fact:

{¶ 7}   1. Claimant sustained a work-related injury on October 16, 2013, and his workers' compensation claim has been allowed for the following conditions:  "lumbosacral contusion; right shoulder sprain; right upper arm sprain; right shoulder contusion; right upper arm contusion, tear supraspinatus, right; tear subscapularis, right."

{¶ 8}   2. An MRI taken April 29, 2014 revealed the following:

> [One] Full thickness supraspinatus tendon tear anterior leading edge of the tendon in the parafootprint location.
>
> [Two] Chronic appearing attenuation involving portions of the mid to posterior supraspinatus tendon critical zone fibers with component of partial thickness tear.
>
> [Three] Articular sided fraying of the subscapularis tendon with subtle low grade partial intrasubstance tear of the superior tendon.

{¶ 9}   3. On July 15, 2015, Michael S. Knapic, D.O., performed arthroscopic surgery on claimant's right shoulder.  The operative report provides:

> There was severe hypertrophic subacromial bursitis. A complete subacromial bursectomy was carried out with a combination of the shaver and a 90-degree suction-tipped ArthroCare wand. This revealed an anterior-inferior subacromial spur and hook, which was impinging the rotator cuff. There was also significant AC joint arthrosis.

{¶ 10}   4. Following surgery, claimant underwent post-operative physical therapy and continued to treat with Dr. Knapic.

{¶ 11}   5. In a physical therapy note dated November 2, 2015, claimant indicated that he was returning to light-duty work.

{¶ 12}   6. In a physical therapy note dated November 6, 2015, claimant reported "soreness noting he came straight from work and did not take any pain medication prior to coming into treatment."

{¶ 13} 7. A week later, on November 17, 2015, claimant reported to physical therapy complaining of "increased soreness and 'clicking' in shoulder this date after trying to lift a 20# bag of dog food at work last night. States he continues to have pinching and clicking pain with abduction."

{¶ 14} 8. A physical therapy note dated December 2, 2015 indicated that claimant had received approval for an additional eight sessions to work on strengthening.

{¶ 15} 9. A review of the physical therapy notes from December 2015 through February 2016 reveal the following:

> 12/09/2015
> The patient reports that he feels 80-85% improved overall in regards to his right shoulder. The patient notes that he has 6-7/10 pain at the worst with 1/10 pain at the least. The patient notes that he feels that he has decreased endurance and strength in the shoulder and has pain with shoulder abduction, shoulder ER and functional IR. The patient describes his pain as sharp and stabbing with shoulder abduction and achy at rest.
>
> * * *
>
> Remaining Impairments Requiring Continued Treatment: Decreased ADL's, decreased endurance, decreased strength, decreased flexibility, increased pain, limited work capacity and decreased range of motion.
>
> 12/22/2015
> [Patient] reports right shoulder is doing well. Notes that he is back to work without c/o's and performing normal household activities without c/o's. [Patient] does note some popping and clicking with abduction especially when palm is down.
>
> 12/29/2015
> [Patient] with no new complaints/concerns. States he continues to have intermittent shoulder soreness depending on activity level.
>
> 01/05/2016
> [Patient] with nothing new to report. Continues to struggle with overhead lifting.
>
> 01/21/2016

Patient reports a set back a week ago Tuesday. He states that he began having increased pain after mopping the floor. He reports pain over the posterior aspect of the shoulder with referred pain into his bicep. He notes that simple tasks such as picking up a coffee cup causes him increased pain. Patient also report[s] night time symptom, often waking due to pain. He has continued to utilize Vicodin for pain as needed.

01/22/2016
[Patient] returned to work and was mopping on 1-13-16. He notes that he was advised from surgeon to watch this type of motion. His supervisor at the time insisted he mop the floors, which he did for 15-20 minutes and felt pain after. Pain is 10/10 and occasionally will decrease to 8/10 with Norco. He is off work until MRI is performed. [Patient] notes that the pain is in right cervical, upper trap and into lateral arm. He will occasionally have tingling in fingers 2-4. His c-9 was extended and has returned to therapy.

01/26/2016
[Patient] reports no significant relief with HEP, though not worse. He is still having pain in right lateral arm and tingling in 2-4th fingers. He reports that he felt some relief when slouching a few times. [Patient] notes that when he is in right sidelying that numbness is worse.

01/28/2016
[Patient] reports feeling maybe a slight improvement from last visit. He is still having some tingling in fingers and pain in the arm. Thinks traction helped some. [Patient] has MRI scheduled for tomorrow.

02/02/2016
[Patient] reports that he has no change in symptoms after traction last visit. The patient notes increased tingling into the hand. The patient notes that the only position that decreases his symptoms is left sidebending. The patient notes that he is unable to sleep well at night secondary to the pain. The patient notes that his MRI had to be rescheduled as he was unable to tolerate the position as it was painful. The patient notes that he has the "same" pain again today.

02/04/2016
Feeling a little better, upper arm doesn't hurt as much and tingling in hand has decreased. He was able to tolerate the

MRI yesterday with increased medication. He has his MRI F/U with Dr. Knapic 2-9-16.

{¶ 16} 10. A second MRI performed February 3, 2016 revealed the following:

[One] Near full to full thickness 11mm nonrefracted tear at confluence of supraspinatus and infraspinatus insertions at the reparative site. Mild peritendinobursitis. No retraction. Mild muscle fatty replacement.

[Two] Inconspicuous biceps arcuate segment. Differential considerations include chronic tear, tenotomy and tenodesis. No acute tear.

[Three] Small superior labrum likely has been debrided.

[Four] Outlet decompression.

{¶ 17} 11. On February 11, 2016, Dr. Knapic completed a C-9 requesting right shoulder revision rotator cuff surgery along with pre-admission testing and post-operative physical therapy.

{¶ 18} 12. Based on the February 18, 2016 review by Kevin Smith, M.D., who opined that the request was directed at a recent injury which had non-allowed conditions. Relator's managed care organization denied the request for surgery.

{¶ 19} 13. James H. Rutherford, M.D., conducted a peer review concerning the issue of whether the second right shoulder revision rotator cuff surgery should be authorized. In his March 4, 2016 report, Dr. Rutherford opined that the requested surgery was related to the allowed conditions and met the Miller criteria, stating:

[One] **Are the medical services reasonably related to the industrial injury**? Yes. There is a claim allowance for tear of the subscapularis and the supraspinatus of the right shoulder and a rotator cuff repair was done on July 15, 2015. The medical records indicate that Mr. Stanford did reasonably well following the surgery and physical therapy, but then he was mopping a floor for a different employer and developed pain and decreased range of motion of his right shoulder, a subsequent MRI showed a retear in the area of the previous rotator cuff repair of the right shoulder with the MRI showing a near full thickness 11 mm non-retracted tear at the confluence of the supraspinatus and infraspinatus insertions at the reparative site. In conclusion it is my

opinion that the requested medical services are reasonably related to the industrial injury.

[Two] **Are the services reasonably necessary for treatment of the industrial injury**? Yes. The medical records indicate that there has been a retear at the previous surgical repair site of the rotator cuff. The requested medical services are reasonably necessary for the treatment of the industrial injury.

[Three] **Are the costs for the services medically reasonable**? Yes.

(Emphasis sic.)

{¶ 20} 14. In an order mailed March 14, 2016, the Ohio Bureau of Workers' Compensation ("BWC") approved the request for surgery, stating:

Per independent peer review dated 3/4/15 the requested service is reasonably related, appropriate and medically necessary for treatment of the industrial injury. James Rutherford, MD opines "A repeat MRI of the right shoulder was done on February 3, 2016 due to ongoing pain in the shoulder. This showed a retear in the area of the [] previous rotator cuff repair of the right shoulder with the MRI showing a near full thickness 11 mm non-retracted tear at the confluence of the supraspinatus and infraspinatus insertions at the reparative site. It is my opinion that the C9 dated 2/11/16 requesting right shoulder revision rotator cuff (39827), post op therapy two to three times a week for six to eight weeks, pre-admission testing/outpatient for period beginning 2/11/16 thru 5/27/16 should be approved in its entirety." The BWC finds the opinion of Dr. Rutherford persuasive & grants the injured workers appeal filed 2/23/16. The C9 dated 2/11/16 is approved as requested.

{¶ 21} 15 On March 11, 2016, Dr. Knapic performed a second arthroscopic surgery on claimant's right shoulder. The pre and post-operative diagnosis was: "Recurrent rotator cuff tear, right shoulder."

{¶ 22} 16. Relator continued to challenge the authorization of the surgery and a hearing was held before a district hearing officer ("DHO") on April 25, 2016. The DHO authorized the surgery as well as the pre-admission testing and post-operative physical therapy finding that claimant had demonstrated that they were necessary for the

treatment of the allowed conditions in his claim. The DHO relied on the following evidence:

> This order is based on the C-9 dated 02/11/2016, MRI report dated 02/03/2016, 03/04/2016 report completed by James Rutherford, M.D., 03/11/2016 operative report, and 03/31/2016 treatment record completed by Michael Knapic, D.O.

{¶ 23} 17. Relator had a file review conducted by Dean W. Erickson, M.D. In his May 23, 2016 report, Dr. Erickson concluded that claimant had two injuries following the October 16, 2013 work-related injury with relator. Dr. Erickson opined that claimant sustained new injuries in November 2015 when he lifted a 20 pound bag of dog food and in January 2016 when he was mopping a floor.

{¶ 24} 18. Relator's further appeal was heard before a staff hearing officer ("SHO") on June 3, 2016. The SHO affirmed the prior DHO order and relied on the following medical evidence:

> This decision is based on the evidence presented at hearing which reflects no new claims have been filed as a result of the exacerbating incidents in November of 2015 and January of 2016; the 02/03/2016 MRI of the right shoulder; the treatment notes, the 02/11/2016 C-9 report, and the 03/11/2016 operative report of Dr. Knapic; and the 03/04/2016 report of James Rutherford, M.D.

{¶ 25} 19. Relator's further appeal was refused by order of the commission mailed June 29, 2016.

{¶ 26} 20. Thereafter, relator filed this mandamus action.

Conclusions of Law:

{¶ 27} The Supreme Court of Ohio has set forth three requirements which must be met in establishing a right to a writ of mandamus: (1) that relator has a clear legal right to the relief prayed for; (2) that respondent is under a clear legal duty to perform the act requested; and (3) that relator has no plain and adequate remedy in the ordinary course of the law. *State ex rel. Berger v. McMonagle*, 6 Ohio St.3d 28 (1983).

{¶ 28} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought

and that the commission has a clear legal duty to provide such relief. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967). A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. *State ex rel. Elliott v. Indus. Comm.*, 26 Ohio St.3d 76 (1986). On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. *State ex rel. Lewis v. Diamond Foundry Co.*, 29 Ohio St.3d 56 (1987). Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. *State ex rel. Teece v. Indus. Comm.*, 68 Ohio St.2d 165 (1981).

{¶ 29} In order to demonstrate entitlement to the disputed medical treatment, claimant was required to meet a three-prong test for the authorization of medical services. Pursuant to *State ex rel. Miller v. Indus. Comm.*, 71 Ohio St.3d 229 (1994), that three-prong test provides: (1) are the medical services reasonably related to the industrial injury, that is the allowed conditions; (2) are the services reasonably necessary for the treatment of the industrial injury; and (3) is the cost of those services medically reasonable? Where the record contains some evidence to support the commission's findings, there is no abuse of discretion and mandamus is not appropriate.

{¶ 30} On October 16, 2013, claimant sustained a work-related injury which resulted in a full thickness tear of the supraspinatus tendon in his right shoulder. Claimant underwent surgery on July 15, 2015. Following surgery, claimant participated in physical therapy. As noted in the findings of fact, claimant progressed well and returned to light-duty work in early November 2015. However, shortly thereafter, claimant began complaining of soreness and clicking in his right shoulder. Claimant noticed an increase in the pain after lifting a 20 pound bag of dog food at work in November 2015 and later, in January 2016, he experienced increased pain while mopping the floor at work. A subsequent MRI in February 2016 revealed a near full thickness re-tear of the previously repaired rotator cuff.

{¶ 31} Relator asserts that claimant sustained new injuries to his shoulder in November 2015 when he lifted a 20 pound bag of dog food and in January 2016 when he was mopping the floor. Relator argues that these two new injuries break the causal

connection between the work-related injury and claimant's need for a second surgery. In support of its argument, relator points to the report of Dr. Erickson.

{¶ 32} In finding that the causal connection was not broken, the commission relied on the physical therapy notes, the second operative report, and the March 4, 2016 report of Dr. Rutherford who opined that the need for the second surgery was indeed related to the original work-related injury. Dr. Rutherford specifically noted that claimant had lifted a bag of dog food and experienced an increase of pain and that, during and after mopping the floor, he likewise noted an increase in pain.

{¶ 33} It is undisputed that an intervening injury can break the causal connection between a work-related injury and the allowed conditions resulting therefrom, and a later request for treatment or compensation. However, the commission has discretion to determine whether or not events which occur actually constitute intervening injuries.

{¶ 34} The act of lifting a 20 pound bag of dog food and mopping a floor are two activities which people perform on a daily basis and are not necessarily considered intervening injuries such as a fall or a motor vehicle accident would be. It would be nice if torn rotator cuffs could be fixed with one surgery and injured workers could be returned to normal; however, that is not reality. It is common knowledge that surgery can leave the repaired tendons in a compromised state making it more difficult for an injured worker to perform ordinary tasks. Twenty pounds is not a lot of weight for a man to lift and mopping a floor is an ordinary household task performed by most people. The magistrate finds that the commission did not abuse its discretion in refusing to accept relator's argument that these two ordinary incidents constituted intervening injuries breaking the causal connection.

{¶ 35} Based on the foregoing, it is this magistrate's conclusion that relator has not demonstrated that the commission abused its discretion in authorizing surgery as well as pre-admission testing and post-operative therapy for relator's shoulder, and this court should deny relator's request for a writ of mandamus.

/S/ MAGISTRATE
STEPHANIE BISCA

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).