[Cite as *State ex rel. Bravo Brio v. Indus. Comm.*, 2018-Ohio-2735.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Bravo Brio<br>Restaurant Group, Inc., | : | |
| | : | |
| Relator, | : | |
| | : | |
| v. | : | No. 17AP-189 |
| | : | |
| Industrial Commission of Ohio et al., | : | (REGULAR CALENDAR) |
| | : | |
| Respondents. | : | |
| | : | |

D E C I S I O N

Rendered on July 12, 2018

**On brief:** *Reminger Co., L.P.A., Arthur W. Brumett, II,* and *Bethanie R. Murray*, for relator. **Argued:** *Arthur W. Brumett, II.*

**On brief:** *Michael DeWine,* Attorney General, and *Eric J. Tarbox,* for respondent Industrial Commission of Ohio. **Argued:** *Eric J. Tarbox.*

**On brief:** *Spitler & Williams-Young Co., L.P.A., William R. Menacher,* and *Steven M. Spitler,* for respondent Kellie A. Farricker. **Argued:** *Steven M. Spitler.*

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

KLATT, J.

{¶ 1} Relator, Bravo Brio Restaurant Group, Inc., commenced this original action in mandamus seeking an order compelling respondent, Industrial Commission of Ohio ("commission"), to vacate its order authorizing medical treatment and granting temporary

total disability ("TTD") compensation to respondent, Kellie A. Farricker ("claimant"), and to issue a new order denying the medical treatment as not related to the allowed conditions in the claim and denying TTD compensation.

{¶ 2} Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, we referred this matter to a magistrate who issued a decision, including findings of fact and conclusions of law, which is appended hereto. The magistrate found that: (1) the commission acted within its discretion when it determined the claimant did not sustain an intervening injury sufficient to break the causal connection between her allowed conditions and her current need for medical treatment; (2) Dr. Healy's reports are not equivocal because he opined that the need for surgery and the period of disability are related solely to the allowed conditions in the claim; (3) the commission effectively found new and changed circumstances based on its determination that the claimant suffered an exacerbation of the allowed conditions in her claim; and (4) the commission essentially found that the *State ex rel. Miller v. Indus. Comm.*, 71 Ohio St.3d 229 (1994) criteria was satisfied because it found the surgery was related to the allowed conditions in the claim. For these reasons, the magistrate has recommended we deny relator's request for a writ of mandamus.

{¶ 3} Relator has filed objections to the magistrate's decision. In its first objection, relator argues that the magistrate's reliance on *State ex rel. Daily Servs., LLC v. Indus. Comm.*, 10th Dist. No. 16AP-604, 2017-Ohio-2771 to find that the claimant did not sustain an intervening injury is error because that case is factual distinguishable. Although the facts in *Daily Servs.* are not identical to the facts presented in the case at bar, we find no error in the magistrate's reliance on the *Daily Servs.* case.

{¶ 4} It is well-established that an intervening injury can break the causal connection between a work-related injury and the allowed conditions resulting therefrom. However, in *Daily Servs.*, this court held the commission has discretion to determine whether or not an event subsequent to the work-related injury, that results in a re-injury of the condition allowed in the claim, constitutes an intervening event that breaks the causal connection between the work-related injury, the allowed condition, and a later request for additional treatment or compensation for the re-injury.

{¶ 5} Specifically, in *Daily Servs.*, the court held that the commission acted within its discretion in determining that lifting a 25 pound bag of dog food and mopping the floor

were not intervening events that broke the causal connection between the work-related injury and the allowed rotator cuff tear, even though the subsequent non work-related event resulted in the re-injury of the allowed condition. In essence, the court reasoned that because a claimant may remain vulnerable to re-injury or exacerbation of an allowed condition even from ordinary daily activities or events, the commission has the discretion to find that those types of events are not intervening events that break the causal connection between the work-related injury and the allowed condition.

{¶ 6} Here, the commission determined that the ordinary daily activity of cleansing after using the toilet, which resulted in the exacerbation of the claimant's allowed conditions for disc protrusion L3-4, L4-5, and L5-S1, herniated disc L4-5 and L5-S1 and lumbar radiculopathy, was not of sufficient magnitude to break the causal connection between the work-related injury and the allowed claim. The magistrate did not err when she relied on *Daily Servs.* in finding that the commission acted within its discretion in making that determination. Therefore, we overrule relator's first objection.

{¶ 7} In its second objection, relator contends that the staff hearing officer's ("SHO") failure to address relator's argument that nonallowed conditions caused the claimant's need for surgery and TTD compensation supports its request for mandamus relief. We disagree. As noted above, the commission found that the claimant's disability and the need for surgery were causally related to the allowed conditions. Therefore, it effectively rejected relator's argument that nonallowed conditions caused the disability. Having found that the claimant established a causal connection between claimant's disability and the allowed conditions, there was no need for the commission to specifically address relator's argument that nonallowed conditions caused the disability. *State ex rel. Ignatious v. Indus. Comm.*, 99 Ohio St.3d 235, 2003-Ohio-3627. For this reason, we overrule relator's second objection.

{¶ 8} In its third objection, relator argues that the magistrate should have recommended mandamus relief because the commission failed to expressly find new and changed circumstances before granting claimant a new period of TTD and authorizing further surgery. Again, we disagree.

{¶ 9} By finding an exacerbation of the allowed conditions and the need for additional surgery, the commission effectively found new and changed circumstances. As

noted by the magistrate, the worsening of allowed conditions and the resulting need for further surgery can constitute new and changed circumstances that can warrant the resumption of TTD compensation. *State ex rel. Chrysler Corp. v. Indus. Comm.*, 81 Ohio St.3d 158 (1998) (need for additional surgery could constitute "new and changed circumstances" supporting the reinstatement of TTD compensation). For this reason, we overrule relator's third objection.

{¶ 10} In its fourth objection, relator contends that the magistrate erred in upholding the commission's decision because there was insufficient evidence that there is a causal relationship between the allowed conditions and the proposed medical treatment and that the allowed conditions were independently disabling. Relator argues that the Medco-14 form completed by Dr. Healy is insufficient evidence that the allowed conditions were independently disabling because the diagnostic code used on the form was broad enough to include both allowed and nonallowed conditions. We disagree.

{¶ 11} Dr. Healy submitted the Medco-14 form and form C-9 using the same diagnostic code. The form C-9 describes surgery to address a disc herniation at L4-5, which is an allowed condition in the claim. The Medco-14 form also asks for an ICD code for the work-related allowed condition. The ICD code provided by Dr. Healy encompasses the allowed condition for herniation at L4-5. Based upon the Medco-14 and form C-9 submitted by Dr. Healy, the commission did not abuse its discretion when it found that the claimant's disability, and the need for surgery, were causally related to the allowed conditions. Again, the commission was not required to address relator's argument that nonallowed conditions caused or contributed to the claimant's disability. For these reasons, we overrule relator's fourth objection.

{¶ 12} In its fifth and last objection, relator argues that the magistrate erred in finding that a completed form C-9 was sufficient evidence to establish that the requested treatment is necessary and appropriate for the allowed conditions in the claim in the absence of an express statement of this relationship and necessity. Relator acknowledges that this argument was expressly rejected in *State ex rel. Carlisle, Brake & Friction v. Codney*, 10th Dist. No. 15AP-1006, 2016-Ohio-7866, wherein this court held that "such findings are implicit in a completed form C-9 identifying the allowed conditions as the basis for the request." *Id.* at ¶ 6. Nevertheless, relator urges us to abandon this holding. We

decline to do so.  For the reasons articulated in *Carlisle*, although form C-9 does not include an express statement that the requested services are reasonably related to the allowed conditions identified on the form, and reasonably necessary for the treatment of those conditions, such findings are implicit in a completed form C-9 identifying the allowed conditions as the basis for the request.  For this reason, we overrule relator's fifth objection.

{¶ 13} Following an independent review of this matter, we find the magistrate has properly determined the facts and applied the appropriate law.  Therefore, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein.  In accordance with the magistrate's decision, we deny relator's request for a writ of mandamus.

*Objections overruled; writ of mandamus denied.*

BROWN, P.J., and BRUNNER, J., concur.

_____

**APPENDIX**

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| The State ex rel. <br> Bravo Brio Restaurant Group, Inc., | : | |
| | : | |
| Relator, | | |
| | : | |
| v. | : | No. 17AP-189 |
| | : | |
| Industrial Commission of Ohio <br> and | : | (REGULAR CALENDAR) |
| Kellie A. Farricker, | | |
| | : | |
| Respondents. | | |
| | : | |

MAGISTRATE'S DECISION

Rendered on October 6, 2017

*Reminger Co., L.P.A., Arthur W. Brumett II,* and *Bethanie R. Murray*, for relator.

*Michael DeWine,* Attorney General, and *Eric J. Tarbox,* for respondent Industrial Commission of Ohio.

*Spitler & Williams-Young Co., L.P.A., William R. Menacher,* and *Steven M. Spitler,* for respondent Kellie A. Farricker.

IN MANDAMUS

{¶ 14} Relator, Bravo Brio Restaurant Group, Inc., has filed this original action requesting this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which authorized medical treatment and granted temporary total disability ("TTD") compensation to respondent, Kellie A. Farricker

("claimant"), and ordering the commission to find that the medical treatment was not related to the allowed conditions in her claim, and consequently TTD compensation should not be paid.

Findings of Fact:

{¶ 15} 1. Claimant sustained a work-related injury on March 24, 2009 and her workers' compensation claim has been allowed for the following conditions:

> Head contusion; back contusion; left upper arm contusion; cervical sprain; cervical strain; minor closed head injury; thoracic strain; lumbosacral strain; disc protrusion L3-4, L4-L5, L5-S1; radiculopathy L5-S1; herniated disc at L4-5 and L5-S1; major depressive disorder, single episode.

{¶ 16} 2. In 2012, relator's allowed physical conditions were found to have reached maximum medical improvement ("MMI").

{¶ 17} 3. An MRI taken October 15, 2015 revealed the following:

> [One] 4.5 mm left paracentral disc herniation at L4-L5 posteriorly deflects the left L5 nerve root.
> [Two] Posterior annular tear and posterior disc bulge at L5-S1.
> [Three] Lumbar lordotic straightening.

{¶ 18} 4. On April 11, 2016, claimant presented at Promedica Toledo Hospital with an acute exacerbation of her chronic back pain. Claimant explained that she was sitting on the toilet and went to wipe herself when she felt the sudden onset of pain.

{¶ 19} 5. The MRI taken April 11, 2016 revealed the following:

> Patient demonstrates muscle spasm. Lower lumbar spine disc desiccation.
> Disc bulge L3-4.
> Asymmetrical facet disease L4-5 with significant focal disc herniation central and paracentral to the left with central canal stenosis and lateral recess stenosis particularly on the left. L5-S1 broad-based disc bulge with central annular tear.

At this time, the following was also noted: "Disc lesion measures approximately 10 x 6 mm."

{¶ 20} 6. On April 12, 2016, Michael A. Healy, M.D., operated on claimant and performed a "Left-sided L4-L5 hemilaminectomy, microdiskectomy, and foraminotomy."

{¶ 21} 7. The pre-operative diagnoses were:

[One] Acute onset of severe radiculopathy and minor signs of
urinary retention.
[Two] Herniated lumbar disk, left-sided L4-L5.

{¶ 22} 8. Following the surgery, Dr. Healy submitted a C-9 form requesting payment for the surgery and associated post-operative therapy. Claimant also filed C-86 motions requesting the payment of TTD compensation from April 12, 2016, the date of surgery, through June 29, 2016 and continuing. In support, claimant submitted the May 12, 2016 operative report and the May 20, 2016 Medco-14 Physician's Report of Work Ability completed by Dr. Healy.

{¶ 23} 9. Additional Medco-14 forms would extend the requested period of disability into February 2017.

{¶ 24} On the May 12, 2016 Medco-14, Dr. Healy listed the allowed condition as displacement of lumbar inter disc with an ICD code of M51.26.

{¶ 25} On the July 5, 2016 Medco-14, Dr. Healy listed the allowed condition as HLD with the ICD code of M51.26.

{¶ 26} On the November 25, 2016 Medco-14, Nathan Hill, M.D., listed the allowed conditions with the corresponding ICD codes:

| | |
|---|---|
| Displacement of lumbar disc | M51.26 |
| Disc displacement lumbosacral | M51.27 |
| Lumbar radiculopathy | M54.16 |

{¶ 27} 10. Relator opposed the motions and submitted the independent medical file review of Bernard Bacevich, M.D., dated June 24, 2016. Dr. Bacevich listed the allowed conditions in claimant's claim and identified all the medical records which he reviewed. Thereafter, Dr. Bacevich discussed the events of April 11, 2016, when claimant presented to the hospital:

On April 11, 2016, she presented to Toledo Hospital Emergency Room with an acute exacerbation of her chronic pain which developed while she was sitting to urinate. She was reporting some decreased rectal sensation, and then on rectal examination, she had normal tone and sensation. She had difficulty moving her left leg due to pain. An emergency MRI was carried out, still showing the disc bulge at L3-4 but at L4-5, there was a significant focal disc herniation central and paracentral to the left in conjunction with some central canal stenosis. The L5-S1 disc was still bulging with a central

annular tear. The ER contacted Dr. Healy, neurosurgeon, by phone, and he agreed to admit her. She was placed on steroid medications. In the radiology report, the L4-5 disc, as well as the other two discs, were all still desiccated; however, now the L4-5 disc showed a significant focal disc herniation central and to the left, causing effacement of the cauda equina. In the history and physical note, she stated that she had ambulated to the bathroom that day and did urinate, and then proceeded to wipe herself, and as she bent over, she felt a very sharp, tearing pain in her lower back. This was unrelieved with her medication. She was having shooting pains down the back of her legs and numbness and tingling, and for that reason, reported to the emergency room. Dr. Healy did take her to surgery the next day, April 12, 2016. He did identify the herniated disc at the L4-5 level. He did not describe in the operative report whether this was an extruded or sequestered disc fragment, but he did proceed with a hemilaminectomy and microdiscectomy. She was discharged without complications. She was ambulatory with a walker. Her medications at discharge included baclofen, gabapentin, valium, and Percocet.

{¶ 28} Dr. Bacevich explained why, in his medical opinion, the motion should be denied. First, Dr. Bacevich stated:

It is my opinion that the conditions of disc protrusion L3-4, L4-5, L5-S1, and radiculopathy L5-S1, and herniated disc at L4-5 and L5-S1 were not supported by objective findings. This was evidenced early on by the IME by Dr. Lieser where he found that she had only subjective complaints and no objective findings to support these allowed conditions. Her initial MRI of January 8, 2010, shows that all three lumbar discs showed disc desiccation. Disc desiccation is a sign of degeneration, and degenerating, desiccating discs are almost always associated with disc protrusions.

This is a degenerative process and is quite common in overweight individuals, especially individuals who are smoking.

{¶ 29} Dr. Bacevich opined that, based on his review of the medical records, the requested surgery, and additional treatment was not medically necessary and was not appropriate for the allowed conditions in the claim. Specifically, Dr. Bacevich explained:

Based upon my review of the medical records, it is my opinion that the C-9, dated May 18, 2016, requesting left-sided L4-5

hemilaminectomy, microdiscectomy, and foraminotomy followed by physical therapy three times a week for six or eight weeks and a 23-hour observation period at Toledo Hospital was not medically necessary and appropriate for the allowed conditions in this claim. The surgery was performed on April 12, 2016. It is my opinion that this claimant underwent a totally unrelated acute disc herniation due to bending while using the toilet, and she incurred an acute L4-5 left disc herniation with compression of the cauda equina. I cannot relate this acute disc herniation, occurring seven years after her industrial injury, as being related. Simple bending over while on a toilet can place abnormal stress on the lumbar spine to cause a degenerative disc to acutely herniate. The surgery was necessary for the acute disc herniation, but I do not relate the acute disc herniation to her longstanding, chronic lower back pain.

{¶ 30} 11. The motions were heard before a district hearing officer ("DHO") on October 13, 2016. The DHO determined that claimant did not suffer a new injury but that she exacerbated her pre-existing condition causing the condition to be clinically significant when it had not been so before. The DHO authorized payment for the treatment and the payment of TTD compensation.

{¶ 31} 12. Relator appealed and the matter was heard before an staff hearing officer ("SHO") on January 12, 2017. The SHO also granted the request for treatment and payment of compensation, stating:

The Hearing Officer finds the Injured Worker suffered an acute exacerbation of her allowed conditions when she used the restroom and felt excruciating pain. She sought treatment on 4/11/2016 at Promedica Toledo Hospital. Emergency room records describe that the Injured Worker has a history of chronic back problems after an injury in 2009 while working. "She had ambulated to the bathroom today and did urinate. She proceeded to wipe herself and unfortunately as she bent over she felt a very sharp tearing type pain in her lower back. ... the pain was unrelieved, intensified, and is rated at a 10 of a 10 ... she reported to the ER for further evaluation..." The Hearing Officer finds Injured Worker did not sustain an intervening injury when she went to the bathroom and felt an increase in pain. The Hearing Officer finds that the Injured Worker suffered an exacerbation of her currently allowed conditions in the claim.

The related request for treatment as contained on 07/20/2016 for a left-sided L4-5 hemilaminectomy microdiskectomy and foraminotomy, physical therapy and aquatics three times a week x 6-8 weeks as requested by Michael Healy, M.D. is authorized as written. The treatment is found to be reasonable, necessary and appropriate for treatment of the allowed conditions in the claim.

The related request for payment of temporary total benefits from 04/12/2016 through the present and continuing is payable as a result of the operative procedure for the allowed conditions in the claim. MEDCO-14s Physician's Report of Work Ability completed by Michael Healy, M.D., and Nathan Hill, M.D. support this finding. Temporary total benefits are to continue upon submission of proof of disability for the currently allowed conditions in the claim. This finding is based upon the credible testimony of Injured Worker at hearing as well as treatment records of Dr. Healy and Toledo Hospital and credible testimony of Injured Worker at hearing.

{¶ 32} 13. Relator's further appeal was refused by order of the commission mailed February 8, 2017.

{¶ 33} 14. Thereafter, relator filed the instant mandamus action in this case.

Conclusions of Law:

{¶ 34} For the reasons that follow, it is this magistrate's decision that this court should deny relator's request for a writ of mandamus.

{¶ 35} The Supreme Court of Ohio has set forth three requirements which must be met in establishing a right to a writ of mandamus: (1) that relator has a clear legal right to the relief prayed for; (2) that respondent is under a clear legal duty to perform the act requested; and (3) that relator has no plain and adequate remedy in the ordinary course of the law. *State ex rel. Berger v. McMonagle*, 6 Ohio St.3d 28 (1983).

{¶ 36} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967). A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. *State ex rel. Elliott v. Indus. Comm.*, 26 Ohio St.3d 76 (1986). On the other hand, where the record contains some evidence to

support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. *State ex rel. Lewis v. Diamond Foundry Co.*, 29 Ohio St.3d 56 (1987). Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. *State ex rel. Teece v. Indus. Comm.*, 68 Ohio St.2d 165 (1981).

{¶ 37} TTD compensation awarded pursuant to R.C. 4123.56 has been defined as compensation for wages lost where a claimant's injury prevents a return to the former position of employment. Upon that predicate, TTD compensation shall be paid to a claimant until one of four things occurs: (1) claimant has returned to work; (2) claimant's treating physician has made a written statement that claimant is able to return to the former position of employment; (3) when work within the physical capabilities of claimant is made available by the employer or another employer; or (4) claimant has reached MMI. *See* R.C. 4123.56(A); *State ex rel. Ramirez v. Indus. Comm.*, 69 Ohio St.2d 630 (1982).

{¶ 38} Relator asserts the commission abused its discretion by failing to (1) find that claimant sustained an intervening injury; (2) find that the surgery was performed to treat non-allowed conditions; (3) find that the C-9, Medco-14s, and office notes on which the commission relied were equivocal; (4) find new and changed circumstances to award TTD compensation after claimant's allowed physical conditions had reached MMI; and (5) discuss the criteria for authorizing treatment found in *State ex rel. Miller v. Indus. Comm.* 71 Ohio St.3d 229 (1994). For the reasons that follow, the magistrate disagrees with relator's arguments and that a writ of mandamus is not appropriate.

{¶ 39} Relator's first argument is that the commission abused its discretion by failing to find that claimant had sustained an intervening injury. For the reasons that follow, the magistrate finds that the commission did not abuse its discretion in this regard.

{¶ 40} It is undisputed that an intervening injury can break the causal connection between a work-related injury and the allowed conditions resulting therefrom, and a later request for treatment or compensation. However, the commission has discretion to determine whether or not events which occur actually constitute intervening injuries.

As noted in the findings of fact, on March 24, 2009, claimant sustained a work-related injury which resulted in significant low-back conditions being allowed. Claimant's allowed physical conditions were found to have reached MMI in 2012. Thereafter, in April 2016, claimant presented at the hospital with an acute exacerbation of her chronic back pain explaining that, while sitting on the toilet, she went to wipe herself and felt the sudden onset of pain. Relator argues that the act of wiping herself constituted an intervening injury breaking the causal connection between the work-related injury and the resulting allowed conditions and her current need for treatment.

{¶ 41} The magistrate finds that this case is analogous to the situation presented in *State ex rel. Daily Services v. Indus. Comm. & Darion Stanford,* 10th Dist. No. 16AP-604, 2017-Ohio-2771. In that case, Darion Stanford sustained a work-related injury in 2013 and his workers' compensation claim was allowed for the following conditions: "lumbosacral contusion; right shoulder sprain; right upper arm sprain; right shoulder contusion; right upper arm contusion, tear supraspinatus, right; tear subscapularis, right." Stanford underwent shoulder surgery and, in November 2015, returned to light-duty work with his employer.

{¶ 42} Shortly after returning to work, Stanford reported to physical therapy complaining of "increased soreness and 'clicking' in shoulder this date after trying to lift a 20# bag of dog food at work last night. States he continues to have pinching and clicking pain with abduction." Stanford was granted additional weeks of therapy.

{¶ 43} In January 2016, Stanford indicated that he had been mopping the floor at work and noticed an increase in pain. Ultimately, following a repeat MRI, Stanford's physician of record recommended right shoulder revision rotator cuff surgery. The employer argued that the act of lifting a bag of dog food and mopping the floor did not constitute intervening injuries which broke the causal connection. The commission disagreed and relied on the physical therapy notes, the second operative report, and a report from Dr. Rutherford to find that the need for the second surgery was indeed related to the original work-related injury.

{¶ 44} Relator filed a mandamus action in this court and this court adopted the magistrate's decision which included the determination that lifting the 20 pound bag of dog

food and mopping the floor did not constitute intervening injuries. Specifically, this court, through its magistrate, stated:

> The act of lifting a 20 pound bag of dog food and mopping a floor are two activities which people perform on a daily basis and are not necessarily considered intervening injuries such as a fall or a motor vehicle accident would be. It would be nice if torn rotator cuffs could be fixed with one surgery and injured workers could be returned to normal; however, that is not reality. It is common knowledge that surgery can leave the repaired tendons in a compromised state making it more difficult for an injured worker to perform ordinary tasks. Twenty pounds is not a lot of weight for a man to lift and mopping a floor is an ordinary household task performed by most people. The magistrate finds that the commission did not abuse its discretion in refusing to accept relator's argument that these two ordinary incidents constituted intervening injuries breaking the causal connection.

*Id.* at ¶ 34.

{¶ 45} Based on the above analysis, the magistrate finds that the commission did not abuse its discretion in finding that claimant here did not sustain an intervening injury when she wiped herself after utilizing the bathroom facilities. This is an ordinary, everyday event which, as a general rule, does not cause any injury.

{¶ 46} Relator's second and third arguments are interrelated and will be addressed together. Relator argues that the surgery was performed to treat non-allowed conditions and that the medical evidence on which the commission relied, specifically Dr. Healy's C-9, Medco-14s, and office notes, were equivocal.

{¶ 47} It is undisputed that claimant bears the burden of establishing that her disability is independently caused by the allowed conditions in the claim. *See State ex rel. Waddle v. Indus. Comm.,* 67 Ohio St.3d 452 (1993).

{¶ 48} Claimants who also have non-allowed conditions can still establish entitlement to an award of TTD compensation provided they establish that the allowed conditions are independently disabling. *State ex rel. WCI Steel, Inc. v. Indus. Comm.,* 96 Ohio St.3d 24, 2002-Ohio-3315. As long as a claimant establishes a causal connection between the allowed conditions and the disability, the claimant does not have to

additionally prove that the non-allowed conditions do not cause the inability to return to work. *See State ex rel. Ignatious v. Indus. Comm.*, 99 Ohio St.3d 285, 2003-Ohio-3627.

{¶ 49} Relator argues that Dr. Bacevich's extensive review of claimant's medical records establishes that the surgery and treatment was not related to the allowed conditions in the claim. Relator also directs this court's attention to the fact that the April 2016 lumbar MRI showed the following non-allowed conditions: annular tear, degenerative disc disease, canal stenosis, and cauda equina compression. However, what relator fails to acknowledge is that the disc herniation at L4-5 measured 4.5 millimeters in 2015 and was now approximately 10 x 6 millimeters in 2016. This was a substantial increase in size which naturally effected the amount of pain claimant was experiencing. On every C-9 and Medco-14 completed by Dr. Healy, he noted the allowed conditions in claimant's claim as necessitating the surgery and being responsible for the new period of disability. As noted previously, claimant was not required to establish that non-allowed conditions did not affect her; only that the allowed conditions in the claim were causing the current period of disability.

{¶ 50} With regard to the above, relator's third argument is that claimant's medical evidence was equivocal. Relator bases this on the fact that Dr. Healy did acknowledge the other non-allowed conditions which were present after claimant exacerbated her condition. Relator argues that Dr. Healy never outright stated that the allowed conditions were the sole cause of claimant's disability.

{¶ 51} In *State ex rel. Carlisle Brake & Friction v. Codney,* 10th Dist. No. 15AP-1006, 2016-Ohio-7866, this court specifically stated that a completed form C-9 constitutes a physician's certification and medical opinion that the requested services are reasonably related to the allowed conditions identified on the form and reasonably necessary for the treatment of those conditions. Specifically, this court stated:

> The form C-9 that Codney submitted on January 7, 2015, was completed by physician David Krahe, D.O., on October 20, 2014, to the text of the note and seeks reimbursement for the requested TENS unit medical supplies. At issue is whether that form, standing alone, constitutes some evidence in support of the SHO's order granting Codney's request for authorization to receive those supplies.

> This court recently determined that a completed form C-9 constitutes a physician's certification and medical opinion that the requested services are reasonably related to the allowed conditions identified on the form and reasonably necessary for treatment of those conditions. *State ex rel. Cooper Tire & Rubber Co. v. Bowers,* 10th Dist. No. 14AP-331, 2015-Ohio-2240, ¶ 53-54. Although form C-9 does not include an express statement of this relation and necessity, such findings are implicit in a completed form C-9 identifying the allowed conditions as the basis for the request. *See Bowers* at ¶ 53. Here, Dr. Krahe listed within the "treating diagnosis" section of the form C-9 the ICD-9 code numbers that correspond to the allowed conditions. Thus, the form C-9 reflects Dr. Krahe's certification and medical opinion that the requested medical supplies are reasonably necessary and related to the allowed conditions of the claim. *See id.* Consistent with this court's decision in *Bowers*, we agree with the magistrate's determination that the form C-9 that Dr. Krahe completed, standing alone, provides some evidence in support of the SHO's order. Therefore, we find Carlisle's objection to the magistrate's decision to be meritless.

*Id.* at ¶ 5-6.

{¶ 52} The magistrate finds that Dr. Healy's records are not equivocal. While he acknowledges there are other lumbar conditions present, he maintains throughout that the need for surgery and the period of disability are related solely to the allowed conditions in claimant's claim. As such, the magistrate finds that relator's second and third arguments are likewise rejected.

{¶ 53} Relator's fourth argument is that the commission failed to find new and changed circumstances to reinstate TTD compensation. Inasmuch as claimant's allowed physical conditions had been found to have reached MMI, relator asserts that the commission abused its discretion by not making this finding.

{¶ 54} Admittedly, the commission's order does not make any specific finding of new and changed circumstances to warrant the payment of a new period of TTD compensation. However, the commission did specifically find that claimant suffered an exacerbation of her condition and that the surgery was necessary. Worsening of conditions and a need for surgery do constitute new and changed circumstances that can warrant the resumption of TTD compensation. *See, for e.g., State ex rel. Bing v. Indus. Comm.*, 61 Ohio

St.3d 424 (1991). The magistrate finds that there is no need to return this case to the commission so that the commission can specifically state that it found new and changed circumstances when the language of the order specifically finds that claimant suffered an exacerbation of the allowed conditions in her claim.

{¶ 55} Lastly, relator argues that the commission abused its discretion by not specifically quoting the criteria from *Miller.* It is undisputed that in *Miller* the court established a three-prong test for the authorization of medical services: (1) are the medical services reasonably related to the industrial injury; (2) are the services reasonably necessary for treatment of the industrial injury; (3) is the cost of such service medically reasonable? Inasmuch as the magistrate has already explained that a physician's completion of a C-9 is sufficient to establish the physician's opinion that treatment is reasonably related to the industrial injury and necessary for the treatment of the industrial injury, the magistrate finds that, in essence, the commission did make this finding. Claimant presented at the hospital in extreme pain. The MRI showed that the herniated disc was significantly larger than it had been one year earlier. Surgery was essentially performed on an emergency basis. Inasmuch as the commission found that the surgery was related to the allowed conditions in the claim, the magistrate sees no reason to return this matter to the commission just so the commission can state that the *Miller* criteria are met.

{¶ 56} Based on the foregoing, it is this magistrate's decision that relator has not demonstrated that the commission abused its discretion in finding that the surgery was related to the allowed conditions in the claim and authorizing the payment of a new period of TTD compensation, and this court should deny relator's request for a writ of mandamus.

/S/ MAGISTRATE
STEPHANIE BISCA

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).